## GRAVES *v.* UNITED STATES.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT OF ARKANSAS.

No. 838. Submitted October 19, 1893. — Decided November 6, 1893.

Where objection is made in a criminal trial to comments upon facts not in evidence or statements having no connection with the case or exaggerated expressions of the prosecuting officer, it is the duty of the court to interfere and put a stop to them if they are likely to be prejudicial to the accused.

The wife of a person accused of crime is not a competent witness, on his trial, either in his own behalf or on the part of the government, and a comment to the jury upon her absence by the district attorney, permitted by the court after objection, is *held* to be reversible error.

THIS was a writ of error upon the conviction of the plaintiff in error for the murder of an unknown man in the Indian Territory on the 13th day of February, 1889.

The evidence on the part of the prosecution tended to show that several days before the murder two men stopped together at Vian, and obtained a contract to make rails for one Waters, and lived in a house about one mile from Waters' residence. They came from Winslow, in the State of Arkansas, in an old vehicle drawn by two horses, and were on their way to Oklahoma, staying at Vian for a few days for the purpose of earning provisions for themselves and horses. One of these men was accompanied by his wife and two small children. After remaining for several days they left the neighborhood, and were next seen camping near the scene of the murder, on the evening of February 13. Their personalities were remembered although their names were forgotten, except that a boy remembered the name of one of them to have been John Graves. The morning after they were seen together in camp one of the men was seen putting the horses to the vehicle, in which were the woman and a child, but the witness saw but one man and one child. About the 1st of May following, the remains of a dead man were found near the place where the witness claimed to have seen the people camped. The body was decayed, but was identified mainly by peculiarities of the teeth and clothing. He was the man who had claimed to own the horses and wagon. The witnesses for the prosecution recognized the defendant Graves as the other man, though to most of them his name had been unknown. Defendant's wife was admitted to have been in town at the time of the trial, but did not appear in the court-room. She was seen by one of the witnesses of the prosecution outside of the court-room, and was believed by the witness to have been the woman who had been with the party.

The defence was an alibi, and was supported by several witnesses, who swore that in the months of January, February, and March of that year defendant was in Washington County, Arkansas, a distance of one hundred miles or more from the place where the remains of the dead man were found. Upon conviction of murder, defendant sued out this writ of error, making fifteen assignments of error.

*Mr. A. H. Garland* for plaintiff in error.

*Mr. Assistant Attorney General Whitney* for defendants in error.

MR. JUSTICE BROWN, after stating the case, delivered the opinion of the court.

The first assignment of error is to the action of the court in permitting "the district attorney in his closing argument to the jury, over the objections of the defendant, to comment upon the absence of the defendant's wife from the presence of the court, and to state, among other things to the jury, that the defendant's wife ought to have been sitting by the side of her husband during the trial, so that witnesses for the government could see her and identify her as the woman who was said to have been with the defendant in the Indian country before the unknown man's remains or bones were found, and other like arguments, statements, and declarations." While we do not wish to be understood as holding that comments by the district attorney upon the facts not in evidence, or statements made having no connection with the case, or exaggerated expressions, such as counsel in the heat of trial are prone to indulge in, will necessarily vitiate a verdict, if not objected to, yet when the attention of the court is called to them specially, and objection is made, it is its duty to interfere and put a stop to them if they are likely to be prejudicial to the accused. *Wilson* v. *United States,* 149 U. S. 60 ; *Hall* v. *United States, ante,* 76.

Had the wife been a competent witness, the comments upon her absence would have been less objectionable. It was said by Chief Justice Shaw in the case of the *Commonwealth* v. *Webster,* 5 Cush. 295, 316 : " But when pretty stringent proof of circumstances is produced tending to support the charge, and it is apparent that the accused is so situated that he can offer evidence of all the facts and circumstances as they existed, and show, if such was the truth, that the suspicious circum-

stances can be accounted for consistently with his innocence, and he fails to offer such proof, the natural conclusion is that the proof, if produced, instead of rebutting, would tend to support the charge." The rule even in criminal cases is that if a party has it peculiarly within his power to produce witnesses whose testimony would elucidate the transaction, the fact that he does not do it creates the presumption that the testimony, if produced, would be unfavorable. 1 Starkie on Evidence, 54; *People* v. *Hovey,* 92 N. Y. 554, 559; *Mercer* v. *State,* 17 Tex. App. 452, 467; *Gordon* v. *People,* 33 N. Y. 501, 508.

But this presumption does not apply to every fact in the case which it may be in the power of the defendant to prove. He is not bound to anticipate every fact which the government may wish to shew in the course of the trial, and produce evidence of that fact. In this case the wife was not a competent witness either in behalf of, or against her husband; if he had brought her into court, neither he nor the government could have put her upon the stand, and he was under no obligation to produce her for the purpose assigned by the district attorney, that the witnesses for the government could see her and identify her as the woman who was said to have been with the defendant in the Indian country before the unknown man's remains or bones were found. Permission to make this comment was equivalent to saying to the jury that it was a circumstance against the accused that he had failed to produce his wife for identification, when, knowing that she could not be a witness, he was under no obligation to do so. The jury would be likely to draw the inference that she was prevented from testifying for her husband because her evidence might be damaging. It was in fact as if the court had charged the jury that it was a circumstance against him that he had failed to produce his wife in court.

The view we have taken of this assignment of error renders it unnecessary to consider the others.

The judgment must be

*Reversed, and the case remanded with instructions to set aside the verdict and grant a new trial.*

Mr. Justice Brewer dissenting.

I dissent from the opinion and judgment of the court in this case. I think that the absence of the defendant's wife from the court-room was, under the circumstances, a legitimate subject of comment in argument. The theory of the prosecution was, that one of the two men who came to Vian was murdered by the other; that the body found was that of the murdered man; that the defendant was the murderer. The testimony was abundant that these men were accompanied in their trip by the wife and two small children of one of them. Defendant attempted to prove an alibi, and to show that at the times named, and when these two men were in the Territory, he was in Washington County, Arkansas, — more than a hundred miles away, — and that his wife was with him there. Witnesses for the prosecution who saw the two men and the woman at Vian, and who identified this defendant as one of those men, would unquestionably be strengthened in their testimony, if upon seeing the woman they were also able to identify her. There might be some mark, some peculiarity of feature in the wife — something, perhaps, for the time being forgotten — which would make the witnesses absolutely sure that she was the woman who was present in the Territory. And, conversely, there might be some peculiarity in the features of that woman which, not found in the defendant's wife, would have led the witnesses to hesitate as to their identification of him. One way or the other, a sight of her by the witnesses for the prosecution might be a significant factor in determining his identity. There was evidence before the jury that she was in Fort Smith during the trial, and yet she was not in the court-room by the side of her husband, or where she could be seen by all the witnesses. It is true several reasons for her absence might be suggested: She might have been in such a condition of health as to render it unsafe for her to come to the court-room; she might have been alienated from him, and indifferent as to his conviction or acquittal. But, nevertheless, it was a suggestive fact, and an obvious fact, and, therefore, a legitimate subject of comment

by counsel. I do not understand that a jury in their deliberations are limited to a consideration of that which is, strictly speaking, testimony, but may properly consider any facts developed in the trial from which a reasonable inference may be drawn for or against either party. If, for instance, the fruits or instruments of crime are introduced in evidence, is not the action and conduct of the defendant at the sight of them, as also his demeanor generally in the presence of the jury, a matter of consideration and legitimate comment? If it be developed that a witness exists, presumably under the control of the defendant, who can throw light upon a vital matter, and he is not produced, may not the jury fairly consider that fact, and may not counsel comment on it? In the case of *Commonwealth* v. *Clark*, 14 Gray, 367, there was testimony tending to show that the son of defendant was present and participated in some of the acts relied upon as evidence of guilt. The son was not called as a witness by the defendant, and in the argument of the district attorney this fact was commented upon as tending to show his guilt. An instruction was asked to the effect that the jury must find the defendant guilty, if at all, upon the evidence given under oath in the case, and not from the absence of any witness who might have been produced, but was not. This instruction the court refused to give, but told the jury in substance that it was proper to consider the omission to produce this witness. In respect to this matter the Supreme Court observed as follows: " The omission of the defendant to produce his son as a witness to meet and explain the evidence offered by the government in support of the indictment was a proper subject of comment by counsel, before the jury, and might well be considered by them in connection with the testimony in the case. The witness was in the employment of the defendant and in his interest, and could probably have given an explanation of some of the facts tending to show the guilt of the defendant, if they were susceptible of any construction favorable to his innocence. The failure to call the witness was not relied on as substantial proof of the charge by the government; other evidence had been offered to establish that, which was submitted to the jury

with proper instructions. If this evidence, unexplained, tended to prove his guilt, and he failed to bring evidence within his control to explain it, his omission to do so was a circumstance entitled to some weight in the minds of the jury."

In that case, as in this, there might have been some satisfactory reason for the absence of the witness; but none was given, and it was held, and rightly, that his non-production was a subject for consideration and also for comment. See also *Gavigan* v. *Scott*, 51 Michigan, 373; *Tobin* v. *Shaw*, 45 Maine, 331; *Commonwealth* v. *Webster*, 5 Cush. 295, 316; *McDonough* v. *O'Neil*, 113 Mass. 92; *Blatch* v. *Archer*, Cowper, 63, 65; 1 Starkie on Evidence, 54. Somewhat analogous are the following cases: *State* v. *Griffin*, 87 Missouri, 608, in which the prosecuting attorney commented upon the fact that the defendant's mother, though living only fifteen miles from the court-room, was not present at the trial, and had evidently abandoned him; and such comments were held by the Supreme Court not sufficient to disturb the judgment. It is true, however, the attention of the trial court was not called to the matter. *North Carolina* v. *Jones*, 77 N. C. 520, in which the defendant, having had a witness sworn, declined to examine him, and that fact was commented on by the prosecuting officer in his closing argument. Objection was made by the defendant, but the court declined to interpose; and in this it was held by the Supreme Court that there was no error. *Inman* v. *Georgia*, 72 Georgia, 269, 278. In this case it appeared that a continuance had once been obtained on the ground of the absence of a witness, and that when the trial was had the witness was present in court, but was not sworn or examined. Objection was made, but the court permitted the counsel to proceed, and in respect to this the Supreme Court observed: "The court held that the conduct of the accused and his counsel during the continuance of the trial were the proper subjects of comment by the counsel engaged in the case. Counsel are allowed the largest liberty in the argument of cases before juries; and whether the argument be logical or illogical, or whether the inferences and deductions drawn by them are correct or not, this court will have no power to intervene.

Facts not proved cannot be discussed, but illogical conclusions from facts proved may be insisted upon, and there is no remedy; but in this case, we think, it was legitimate for counsel to allude to what had transpired in the case, from the time it was called through its whole proceeding, and the conduct of the party or his counsel in connection therewith was the proper subject of comment, and there was no error on the part of the court in allowing the comments of the solicitor general in this case." *People* v. *White,* 53 Michigan, 537, 539. This was a case of bastardy, in which counsel commented upon the resemblance between the defendant and the child of the complaining witness, then present in the court-room, and in respect to this the Supreme Court said : " We do not well see how the jury could be prevented from noticing the child, which was properly enough in court; and while arguments of resemblance in so young an infant, in the absence of peculiarities, are a little preposterous, it is difficult on this record to determine that any rule of law was violated in discussing it."

In this case the wife could not be a witness for her husband, it is true; and yet her presence in the court-room, a presence ordinarily to be expected, would most certainly and obviously have aided materially in the identification of the defendant. She was in the city, as the testimony showed, and her absence from the court-room, unexplained, certainly suggested a motive, and that motive one which cast suspicion upon the defendant. I think the rule that should be laid down is, that, in the absence of express prohibition, every fact which, in no illegal manner, comes to the knowledge of the jury during the progress of a trial, and which may influence their minds, is a subject of comment by counsel in their argument. The fact that defendant's wife was in the city was developed by the testimony; that she was not present in the court-room was an obvious fact; the witness who saw the defendant at or near Vian, as they testified, saw his wife there with him; and it would most certainly add to the force of their testimony if they could have said, We there saw not merely this defendant on trial, but this woman sitting by his side. Every man would feel surer of an identification which included two

persons than if limited to but one.   Some stress seems to be
laid in the opinion of the court upon the fact that the defend-
ant's wife was not a competent witness, and that this distin-
guishes the case from that cited from 14 Gray, and others
in which the books abound.   While it is true that she could
not be sworn and called upon to give testimony, yet she was
herself testimony, and material testimony.   Take this illus-
tration: Suppose one of the witnesses for the government
in this case had testified that while with the defendant at Vian
he had seen in his possession a knife of a peculiar make, had
there taken it and made a mark upon it, and the government
had proved by some other witness that he had seen in the
possession of the defendant, on the very morning of the trial,
a knife of substantially the same make, and no knife was pro-
duced by the defendant; would not the omission to produce
that knife be a significant fact, and one which the prose-
cuting attorney was at liberty to comment upon?   If pro-
duced, and bearing the mark described by the first witness, it
would tend very strongly to support the identification.   Just
so if this wife of defendant had been in the court-room; and
these various witnesses for the prosecution had testified that
she was the same woman they had seen at Vian; can there
be any doubt that the identification would have been more
certain?   So; because in the natural progress of the trial,
without any misconduct on the part of the prosecution, this
fact came to the notice of the jury, and was a fact which
would naturally tend to affect the conclusions of men — it
was a fact in respect to which the prosecuting officer was at
liberty to comment, and suggest to the jury his own conclu-
sions therefrom.

Again, the defence in this case was an alibi.   The witnesses
for the defence who testified to seeing the defendant in
Washington County, Arkansas, at or about the time of the
alleged murder testified that his wife was with him there;
that they had seen her in the city of Fort Smith during the
trial, and that she was the same woman with him theretofore
in Washington County.   It also appeared from the testimony
of one witness that she had been in the hall of the court-house,

and that, though in the city, she had not been around with the other witnesses.

Now, commenting upon the testimony, the counsel for the defence could argue to the jury that they had a double identification — that of the defendant and that of his wife — while the government had only one identification, that of the defendant. Was it not a legitimate argument for the district attorney to make in response to this that, if the wife had been in the court-room by the side of her husband during the trial, as ordinarily she would be expected to be, the government might have had a double identification equally with the defendant; and as the testimony further showed that she was in the city, that she came up into the hall of the court-house, and still was not around with the other witnesses for the defendant, so that the government witnesses might have had a chance to meet and see her — was it not also a legitimate argument, and was not the district attorney justified in making it, that there was probably a reason for her conduct, and that reason the danger of a double identification? The conclusion, it is true, cannot be positively affirmed to be correct; but surely a case ought not be reversed because the counsel for the government draws erroneous conclusions from the facts developed in the trial. If such a rule were laid down, how many verdicts could stand?

It must be borne in mind that there was nothing denunciatory, harsh, or abusive in the language of the district attorney. He simply commented upon the fact, obvious to the jury, that the wife of the defendant was not in the court-room, although shown by defendant's witnesses to be in the city, and drew his conclusions from such facts. The comment was one which would naturally occur to every man aware of the facts, whether on or off the jury. Can it be that the defendant was prejudiced by that? Ought the deliberate judgment of twelve men as to the defendant's guilt, approved as it was by the judge who presided, to be set aside for an error, if error it be, so frivolous as that?

For these reasons I dissent.