# RAPPAPORT *v.* CAPITAL TRACTION COMPANY.

---

WITNESS; CROSS-EXAMINATION; FAILURE TO CALL WITNESS; INFERENCE.

1. The question as to whether or not his mother had a consultation with her attorney four days after the accident is proper cross-examination of a witness who has testified, in an action by his mother for personal injuries, to her serious condition for over a week after her injury; as such question tends in some degree to contradict his previous testimony as to her condition.

2. An offer to prove, in an action for personal injuries against a street railway, on cross-examination of the employee in charge of its legal department, that he had subpœnaed, but not produced, a certain person as a witness, is properly rejected, because not tending to affect his credibility, or to contradict his testimony in chief, which was confined to observations made by him of the plaintiff's movements, with a view to showing that her injuries were not as severe as claimed.

3. The mere fact that a party excuses a witness whom he has subpœnaed does not warrant the inference that the witness, if called, would have testified against him; but to warrant this inference to be drawn it must appear either that the witness knew something about the case or was so positioned with respect to the matter in controversy as to be able probably to give testimony that would aid in developing the truth about it. (Citing *Chesapeake Beach R. Co.* v. *Brez*, 39 App. D. C. 58.)

No. 3177.   Submitted January 9, 1919.   Decided February 3, 1919.

HEARING on an appeal by the plaintiff from a judgment of the Supreme Court of the District of Columbia, on verdict, in an action of negligence against a street railway. *Affirmed.*

The COURT in the opinion stated the facts as follows:

Rebecca Rappaport sued the Capital Traction Company because, as alleged, she sustained injuries through the company's negligence in the operation of one of its street cars. The jury found against her, and she appeals, assigning four errors.

*Mr. Edward S. Duvall* for the appellant.

*Mr. Frank J. Hogan* for the appellee.

Mr. Chief Justice SMYTH delivered the opinion of the Court:

The first and second assignments relate to the cross-examination of the plaintiff's son. He had testified concerning his mother's injuries that "nothing the family could do for her would pacify her; she could not keep quiet; * * * as soon as the doctor would leave she would call for him again, and we would have to call him back; and that condition lasted, I should say—that serious condition—for over a week. * * *."

The son was asked on cross-examination whether or not his mother had a consultation with her attorney on June 18, four days after the accident, to which he replied in the affirmative. No objection was made at the time the question was propounded, but at the close of the cross-examination counsel for the plaintiff moved to strike out the testimony. We think the cross-examination was proper as tending in some degree to show that his previous statement with respect to his mother's condition for "over a week" after the accident was not correct.

On the court's refusal to accept an offer of testimony by the plaintiff are grounded the remaining assignments of error.

After the testimony for both sides had been closed, and the arguments on the prayers for instructions completed, plaintiff recalled a witness, Crow, an employee of the company, who had testified on its behalf, and asked him if he had subpœnaed "a gentleman by the name of Boyce." To this the traction company objected on the ground that it was not proper cross-examination. Counsel for the plaintiff, in response to an inquiry by the court as to what he desired to show by the witness, said that "they [the traction company] had another witness and did not put him on the stand, and I claim that the jury, under the principle of law, have a right to assume that he would have testified against them." The objection was sustained.

The examination in chief of the witness, after he had stated that he was in charge of the investigation of claims for the company's legal department, was confined to certain observations made by him of the plaintiff's movements in her husband's store, with a view to showing that her injuries were not as severe as she claimed. Obviously, neither the testimony called for by the question objected to, nor the offer of proof, had any tendency to contradict, qualify, or limit what the witness had said in chief, or to affect his credibility.

Furthermore, the testimony in question, considered from any angle, was immaterial; and its exclusion could have resulted in no prejudice to the plaintiff. The mere fact that a party excuses a witness whom he had subpœnaed does not warrant the inference that the witness, if called, would have testified against him. Before this inference can be drawn it must appear either that the witness knew something about the case, or was so positioned with respect to the thing in controversy as to be able probably to give testimony that would aid in developing the truth concerning it. This is illustrated by our decision in *Chesapeake Beach R. Co.* v. *Brez,* 39 App. D. C. 58, 71, where the failure of the defendant company to call to the witness stand the gripman on the car at the time of the accident was animadverted upon. He, the case shows, "was in a better position than any passenger on the cars to see what

caused the injury.   *   *   * "   For this reason, we said that the failure to produce him warranted the presumption that his testimony, if given, would be prejudicial to the company.

Similarly, the Supreme Court of the United States has held that "even in criminal cases   *   *   *   if a party has it peculiarly within his power to produce witnesses whose testimony would elucidate the transaction, the fact that he does not do it creates the presumption that the testimony, if produced, would be unfavorable." *Graves* v. *United States,* 150 U. S. 118, 121, 37 L. ed. 1021, 1023, 14 Sup. Ct. Rep. 40.   There is nothing in the record before us which tends in the slightest degree to show that the testimony of the witness who was excused by the traction company "would elucidate the transaction" then being investigated by the court.

Finding no error, the judgment is affirmed, with costs.
*Affirmed.*