CLARA O. BEERS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

FRANK T. BEERS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 67873, 67874. Promulgated July 3, 1936.

*Reuben C. Carlson*, *Esq.*, and *George J. Busch*, *C. P. A.*, for the petitioners.

*P. A. Bayer*, *Esq.*, for the respondent.

## OPINION.

McMahon: The respondent contends that the petitioner and his wife as a marital community derived taxable income from the sale in 1930 of the 1,000 shares of Dupont common and the 1,100 shares of Shares, Inc. Apparently the amount of the gain determined by the respondent resulting in the deficiencies herein involved is not in dispute. However, both of the petitioners claim that the transactions involved herein did not constitute a sale resulting in taxable income, but constituted a capital contribution to Townsend & Co. Whether the transaction involved was a sale is among other things dependent upon the intention of the parties, a governing factor, to be gathered from all the attending facts and circumstances. *United National Corporation*, 33 B. T. A. 790, 794; *Commissioner* v. *Neighbors Realty Co.*, 81 Fed. (2d) 173. Frank T. Beers testified that, at the time a number of stockholders started an investigation of Shares, Inc., informal meetings of some of the directors of both corporations were held; that he felt considerable responsibility as the stock of Shares, Inc., had been more widely distributed than was anticipated when he invested therein and that unless something was done to clean up the situation Townsend & Co. would suffer very severely; that he inquired as to how much money it would take to call in the stock of Shares, Inc., at $50 per share; that it was decided that it would take $200,000; that Townsend & Co. was in no position to put up $200,000; that it was in

a pretty shaky condition; that Frank Townsend stated he would raise $100,000, but later was not able to raise $100,000 and turned in $85,000; that he, petitioner, stated that he did not have $100,000 in money, but that he would contribute 1,000 shares of Dupont common and 1,100 shares of Shares, Inc.; that he turned the shares over to Townsend & Co. about April 20, 1930; that he received no evidence of indebtedness in the form of a note or otherwise from the company; that his interest in cleaning the situation up was such that he was willing to contribute that much; that he turned over his stock as an outright contribution to the company; and that subsequent thereto there never was any money made available to him by the company as a result of turning over the stock. This testimony of the petitioner was corroborated by Wells J. Huntley, secretary-treasurer of Townsend & Co., who attended some of the informal meetings above referred to and in particular the meeting at which the agreement as to the contributions was made, and by Frank C. Neal, who also attended such meetings as the attorney for the corporations. The respondent's determination is presumed to be correct, but that presumption is rebuttable, *Motter* v. *Patterson*, 68 Fed. (2d) 252, and in our opinion it has been successfully overcome.

The respondent contends that the Board may discredit the testimony of witnesses where the balance of the record justifies such action, citing *Uncasville Manufacturing Co.* v. *Commissioner*, 55 Fed. (2d) 893. That case does not support such a contention. It holds that the Board may reject the uncontradicted testimony of a witness, who was the taxpayer's president and sole stockholder, respecting the value of taxpayer's property, the court stating that "of all things value is most uncertain. Opinions about it are prophecies, whose truth can not ordinarily be verified save where the property is fungibles, and there is a concourse of buyers and sellers." Cf. *Dempster Mills Manufacturing Co.* v. *Burnet*, 46 Fed. (2d) 604. However, we are not concerned herein with mere opinion evidence, but with the testimony of an unimpeached witness as to facts, whose testimony was substantially and essentially corroborated by other unimpeached witnesses. "And the Board may not arbitrarily discredit the testimony of an unimpeached taxpayer so far as he testifies to facts." *Blackmer* v. *Commissioner*, 70 Fed. (2d) 255. In *Nichols* v. *Commissioner*, 44 Fed. (2d) 157, cited by the respondent, although the court stated that the Board is not bound by the opinions of witnesses as to the fact of value, it also stated that the testimony of several witnesses to the effect that the bonds in question had no value overcame the presumption arising from the determination of the Commissioner that the bonds had a value of $11,000; that "The burden then shifted to the Commissioner to support his determination

by evidence, and this he did not do nor attempt to do, and accordingly his determination can not stand. *United States* v. *Rindskopf*, 105 U. S. 418"; and that the disregard of such positive and affirmative evidence by the Board is ground for the reversal of its determinations approving the determination of the Commissioner. To similar effect is *Whitney* v. *Commissioner*, 73 Fed. (2d) 589. The only evidence presented by the respondent consisted of copies of the two proposed agreements which were attached to the amended petition of petitioners. He contends that such writings prepared at about the time of the transaction are entitled to greater weight than the oral testimony of witnesses submitted years after the transaction occurred. The evidence shows that these proposed agreements were not prepared until the end of June 1930, while the agreement pertaining to the contributions was reached during April 1930; that the petitioner, although he signed the proposed agreements, took no part in bringing about the drafting of such agreements; that they were prepared at the suggestion of Frank Townsend; that the purpose of the agreements was disclosed to the attorney by the secretary-treasurer of the company; and that the purpose of the agreements as stated therein was that the contributions were "not to be a liability of Townsend & Company" but merely a liability in the sense that the contributions be paid, upon the consent of the preferred and common stockholders, only out of future dividends if and when declared, and were not to be preferred above the general creditors of the company. This plan was suggested by Frank Townsend because he felt that the contributors ought to be reimbursed in the event the company was able, as a result of such contributions, to work out of its difficulties. Under that plan the stockholders were to deliver their stock to the Tacoma Branch of the Bank of California as trustee. However, the agreements never became effective, they were never signed by all the parties or performed, and the trustee named therein refused to accept the trust. The purpose of the proposed agreements was not to reflect the transactions in April 1930, but rather a new and different arrangement. Such agreements tend rather to corroborate the testimony of the petitioner and to sustain his contention that the stock involved was a contribution, and they tend to negative a sale. The agreements indicate an attempt on the part of the contributors at most to have the other stockholders recognize the contributions only to the extent of a preference over stockholdings if and when dividends were available. But the stockholders refused to do so even to that extent.

The respondent further contends that Townsend & Co. sold the 1,000 shares of Dupont common for the petitioner as his agent and that receipt by an agent is equivalent to receipt by the principal.

The evidence however does not permit such a construction of what occurred. The testimony shows that the sale was not made through the petitioner's account or upon his order; that the company treated the stock as its own; that the company sold the stock as its own and received about a thousand dollars more for it than the value entered on its books, of which the petitioner was not informed. As stated in *William Parris*, 20 B. T. A. 320, "The test as to constructive receipt is whether the debtor has funds standing to the credit of the taxpayer which the debtor is able to pay and which are available and subject to the taxpayer's demand." The testimony discloses that the transaction was not entered on the books of the company as an ordinary sale by the company for a client or as a loan; that at no time was there a credit for the amount of $143,000 or the proceeds of the stock in the petitioner's account on the books of the company, subject to his demand; that no entries were made until at the end of June 1930 to reflect the entire transaction; that when the entry was made of the transaction the result was that the surplus account was credited with the amounts of $110,000 and $33,000 reflecting the contribution of the 1,000 shares of Dupont common and the 1,100 shares of Shares, Inc., respectively. It appears that no funds received for this stock were available to petitioner in any event, since the company could not have paid the petitioner for the stock, as prior to the sale it used the stock as collateral and drew against it for the purchase of shares of Shares, Inc. The petitioner agreed to contribute the Dupont stock in question. This stock was then in the possession of Townsend & Co; the company used the stock as its own and as it saw fit and exercised control and dominion thereover. There is no evidence showing that the petitioner received any consideration, either in the form of cash, a credit on the books of Townsend & Co., or a promise to pay. That the petitioner entertained a hope at the time he made the contribution that the company would, if it ever again became prosperous, make some provision to return the contribution or its equivalent to him, did not create an obligation or liability on the part of the company. He testified that at that time no arrangement to that effect was made.

The respondent on brief cites the case of *Frank E. Best*, 21 B. T. A. 1264. It appears in that case in the report of the Board on a rehearing thereof, 26 B. T. A. 1070, that the taxpayer "was unwilling to make an outright donation of any more stock to the company"; that such taxpayer authorized the company in writing to sell certain of his stock, and to retain 20 percent as commission on such sales and 80 percent thereof as a loan to the company. Furthermore, no claim was made by the taxpayer therein that he had made a contribution to the company of the stock sold by the company. That case is distinguishable on the facts and is not controlling herein.

The evidence shows that the petitioner filed a claim against Townsend & Co. in the bankruptcy proceedings covering his open account, in which there was a considerable credit. There is no evidence showing what items were included in such claim and whether such claim was allowed in whole or in part.

The respondent argues further that the failure of the petitioner to produce the records of Townsend & Co. and his monthly statements received from that company raises a presumption that, if produced, they would not be favorable to the petitioner's contention. In *Graves* v. *United States*, 150 U. S. 120, the United States Supreme Court stated as follows:

> * * * The rule even in criminal cases is that if a party has it peculiarly within his power to produce witnesses who testimony would elucidate the transaction, the fact that he does not do it creates the presumption that the testimony, if produced, would be unfavorable. * * *
>
> But this presumption does not apply to every fact in the case which it may be in the power of the defendant to prove. *He is not bound to anticipate every fact which the government may wish to shew* [show] *in the course of the trial, and produce evidence of that fact.* * * * [Emphasis supplied.]

While these records were not produced by petitioner, there is considerable testimony as to the contents of these records pertaining to the transaction here involved, which was received without objection and was, to a large extent, elicited by the respondent upon cross-examination. This testimony shows in substance that the transaction was not treated in such records as a sale through the petitioner's account; that after the entries covering the entire transaction had been made no credit for the stock remained on the books in petitioner's account; and that surplus was increased by the contribution made by the petitioner. It also appears that the records of the company were in the possession of the trustee in bankruptcy, and hence equally available to the respondent. As heretofore stated the petitioner met his burden of proof, the burden then shifted, and the respondent "was required to come forward with evidence to refute the evidence of the petitioner. * * * The Board cannot draw inferences and conclusions from facts or suppositions outside the record." *Whitney* v. *Commissioner, supra.* To similar effect is *C. F. Martin*, 34 B. T. A. 111, 116–117.

We conclude that the petitioners herein contributed the 1,000 shares of Dupont common and 1,100 shares of Shares, Inc., as capital surplus to Townsend & Co., and the determination of the respondent that the transaction constituted a sale is therefore disapproved.

*Decision will be entered for the petitioners.*