Raymond J. FLEMING, Defendant, Appellant,

v.

UNITED STATES of America, Appellee.

No. 6259.

United States Court of Appeals First Circuit.

Heard May 6, 1964.

Decided May 27, 1964.

24

Cornelius T. Finnegan, Jr., Lowell, Mass., for appellant.

A. David Mazzone, Asst. U. S. Atty., with whom W. Arthur Garrity, Jr., U. S. Atty., was on brief, for appellee.

Before WOODBURY, Chief Judge, and HARTIGAN and ALDRICH, Circuit Judges.

ALDRICH, Circuit Judge.

The defendant, after a trial consuming two court days, was found guilty by a jury of armed robbery of a federally insured bank in violation of 18 U.S.C. § 2113(a) and (d). On appeal he alleges that the evidence was insufficient to convict, and that the court should have granted a mistrial because of improper argument by the prosecuting attorney. He also makes an objection, which we do not find merits discussion, to a statement by the court in its charge, and to the denial of a motion for a new trial. This last raises no new matter.

The bank in question was robbed on Tuesday morning following Labor Day by two armed men wearing stocking masks and gloves. Only defendant has been arrested. The eye-witness testimony, necessarily limited to broad physical characteristics, could be found applicable to defendant so far as it went. Defendant lived in Lowell. The automobile, fully identified as the one used by the robbers, had been stolen in Lowell the Saturday before. It was recovered promptly after the robbery. It bore an old, doctored, plate, traced to a Lowell junk yard, and contained, inter alia, stocking masks and gloves. A fingerprint, described by a government expert as fresh, was found inside on the door window on the side occupied by the robber whose general appearance corresponded with defendant's. The expert, who was unshaken on cross-examination, testified that it was a "beautiful impression" and unquestionably the defendant's.

At the time of his arrest, near the end of September, the defendant denied any connection with the car. He stated he was unable to account for his whereabouts Labor Day weekend, or at the time of the robbery. When, in jail, he was confronted with the fingerprint identification he acted in a nervous manner, and kept hitting the wall with his hand, saying "How," but making no reply to the question "How what?"[1] This evidence, taken as a whole, was ample to withstand a motion for acquittal.[2]

No evidence was offered on behalf of the defendant. In the course of the government's argument the prosecutor twice referred to defendant's pretrial inability to account for his whereabouts in such

---

[1]. While this episode is not a strong piece of evidence we think the jury might properly believe it more likely that defendant was asking himself, "How did I slip up?" rather than, "How could this have happened since I was not in the car?"

[2]. Defendant's contention that a special standard of proof must be applied in cases resting upon circumstantial evidence is erroneous. See Dirring v. United States, 1 Cir., 1964, 328 F.2d 512, 515, and cases cited.

broad terms that it included comment upon his failure to take the stand. He was each time promptly rebuked by the court, who informed the jury the argument was improper and that there was no burden on the defendant to explain his whereabouts. Thereafter the prosecutor referred to the defendant's failure to produce an expert. The court immediately interrupted, stating, "I think that is the plainest violation of an obligation resting upon the Government in this case. The Government has the burden of proof and the defendant has not any burden to offer any evidence, his own, expert evidence or lay evidence." The court thereupon offered to declare a mistrial. Counsel for the defendant, after conferring with the defendant, stated that the defendant did not wish a mistrial. The defendant now argues that the court should, nevertheless, have granted one.

■■ Defendant had full opportunity—in fact the court asked him twice—to obtain the relief he now seeks, but he declined. To refuse a mistrial and elect to take his chance with the jury, and then seek a second chance, is not a procedure that appeals except in the gravest instances. Cf. Johnson v. United States, 1943, 318 U.S. 189, 199–201, 63 S.Ct. 549, 87 L.Ed. 704. See cases cited in Reiss v. United States, 1 Cir., 1963, 324 F.2d 680, at 683, cert. den. Jacobs v. United States, 376 U.S. 911, 84 S.Ct. 667, 11 L.Ed.2d 609. Nor is it normally proper for a court, *sua sponte*, to grant a mistrial over defendant's objection, thereby raising serious problems of double jeopardy. See generally, Note, Double Jeopardy: The Reprosecution Problem, 77 Harv.L. Rev. 1272, 1276–80 (1964). The only question we see on this appeal, and one to which, although not advanced by defendant, we have given serious thought, is whether this was such a grave situation that we should seek to fashion a remedy, not to give defendant a new trial, for if this were all he is entitled to, he has waived it, but to discharge him altogeth-

er because the government should not be permitted to prosecute further. Cf. Downum v. United States, 1963, 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100; see generally, Note, The Supervisory Power of the Federal Courts, 76 Harv.L.Rev. 1656 (1963). Without deciding whether there could be such a result,[3] we would not reach it here unless we felt the prosecutor's misconduct had been grossly prejudicial and grossly negligent, or had been in bad faith. With respect to this last, while we find it difficult to understand how he could have repeated the error for which he had already been corrected, still the district court must be the best judge of the prosecutor's behavior, and we feel sure that if it thought he had acted in bad faith it would have so indicated.

■ Turning to the other aspect, the prosecutor's errors fell into two categories. As to the first insofar as his argument related to defendant's statement, when questioned by the police, that he was unable to account for his whereabouts, there is no suggestion that this was unfair. To the extent that it encompassed defendant's failure to offer an explanation in the courtroom, the confusion of the extrajudicial and the courtroom silence might reasonably result in the minds of the jury in any event, quite apart from any government comment. This is not a case where the prosecutor brought to the jury's attention something it was unaware of before. The government's argument, while of course improper, could at least be said to have afforded the court an opportunity, not only to instruct the jury generally, but to point out the particular distinction which it was to draw. The court reacted immediately, and dealt again with the subject in its charge. Under all the circumstances we are not prepared to say that any marked prejudice remained.

■ The prosecutor's comment upon the failure of the defendant to call an expert is somewhat different. There are

---

3. In Downum the district court granted a mistrial, so that the question came up squarely on the matter of double jeopardy.

instances when, after laying a proper foundation, comment on a defendant's failure to produce witnesses other than himself is justified, see Graves v. United States, 1893, 150 U.S. 118, 14 S.Ct. 40, 37 L.Ed. 1021; cf. discussion in Commonwealth v. Domanski, 1954, 332 Mass. 66, 70–71, 123 N.E.2d 368, and such comment has been held permissible in a number of cases. See, e. g., Garcia v. United States, 5 Cir., 1963, 315 F.2d 133, cert. den. 375 U.S. 855, 84 S.Ct. 117, 11 L.Ed. 2d 82; Bisno v. United States, 9 Cir., 1961, 299 F.2d 711, 721–22, cert. den. 370 U.S. 952, 82 S.Ct. 1602, 8 L.Ed.2d 818; United States v. Brothman, 2 Cir., 1951, 191 F.2d 70; United States v. Beekman, 2 Cir., 1946, 155 F.2d 580, 584; Morrison v. United States, 8 Cir., 1925, 6 F.2d 809. While this was not such a case, the court, as already stated, took strong and immediate action, and, again, we do not believe marked prejudice remained.

Judgment will be entered affirming the the judgment of the District Court.