UNITED STATES of America

v.

Lamount Maurice BELGRAVE.

Crim. No. 70–311.

United States District Court,
E. D. Pennsylvania,
Criminal Division.

Nov. 20, 1972.

James C. Sommar, Asst. U. S. Atty., Philadelphia, Pa., for plaintiff.

Edward H. Weis, Asst. Defender, Philadelphia, Pa., for defendant.

## OPINION

DITTER, District Judge.

This case comes before the Court on a motion for judgment of acquittal or for a new trial. The defendant was convicted by a jury of failing to comply with an order to report for a physical examination, a duty required by the Selective Service Act, 50 U.S.C.A. App. § 462.

The following facts were established at the trial.[1] The defendant, Lamount Maurice Belgrave, had registered for the draft. On March 19, 1970, he was mailed a notice, which was not returned as undeliverable, to report for a physical examination on April 10, 1970. Defendant testified that he had not received this notice as he was no longer living with his mother to whose address it was sent.[2]

### MOTION FOR JUDGMENT OF ACQUITTAL

Belgrave contends that the Government's evidence was not sufficient to support a guilty verdict. Defendant argues that in order to be convicted for failure to report for a physical, the government must prove that he received notice to report, and also that he received the notice in time to comply.

---

1. Defendant was first tried on January 19, 1972. On January 21, 1972, a mistrial was declared when the jury was found to be hopelessly deadlocked. The present trial was held on May 2 and 3, 1972.

2. When defendant originally registered for the draft in 1966, he reported his address to be his mother's house. On October 13, 1969, Belgrave went to his local board to request duplicate registration cards, and at that time he gave the same address. However, at trial he testified that during the spring of 1970 he had married and he was no longer living at his mother's home.

██ It is a well established rule that the jury *may infer* that a letter which was mailed and not returned as undeliverable reached its destination in the usual time and was actually received by the addressee. This is not a *conclusive* presumption. United States v. Bowen, 414 F.2d 1268 (3rd Cir. 1969). In addition, a jury is not required to accept a defendant's sworn testimony that he did not receive the notice. United States v. Lee, 458 F.2d 32 (9th Cir. 1972) citing United States v. Bowen, supra.

In the instant case the trial judge charged:

> "The rule itself is well settled that if a letter properly directed is proven to have been put into a post office box or delivered to a postman or a post office, a jury *may infer* from the known course of business in the postal department that the letter reached its destination in the usual time . . ." (emphasis added) (N.T. page 138).

The court later charged:

> "The thing that you are going to have to consider is this. If you decide that the order was mailed and that it was delivered to Mrs. Belgrave's home, did it ever come into the possession of the defendant . . ." (N.T. page 139)

Thereafter, the court said:

> "The defendant can only be convicted if his failure to report was an intentional failure, a voluntary act on his part, an act done with specific intent of disobeying or disregarding the law by failing, neglecting or refusing to report for a physical examination." (N.T. page 142)

The defendant concedes the jury's verdict establishes that he received the draft board's notice, which was mailed on March 19, 1970. He contends, however, the verdict does not mean that he received the notice in time to comply by April 10, 1970.

██ When he testified at trial, Mr. Belgrave did not suggest the notice had come to him when it was too late to report. Therefore, the issue which he now raises was never presented to the jury in precisely this form.[3] Nonetheless, the verdict did establish that Belgrave acted knowingly and not through some accident, inadvertence, or mistake (see N.T. page 142-43).

In ruling on a motion for judgment of acquittal, the test is whether the evidence is such that reasonable minds could find guilt beyond a reasonable doubt. A review of the testimony must be made in a light most favorable to the government giving effect to all inferences which may reasonably be drawn. Viewed in this perspective, Belgrave's assertion that there was insufficient evidence to warrant his conviction must be rejected. The jury concluded defendant had received the notice despite his testimony to the contrary. Under the facts of this case, if the letter had come to him when it was too late for him to report, the jury might well have found his failure to comply was the result of inadvertence. However, the jury decided he deliberately refused to report. The verdict, coupled with defendant's failure even to suggest the notice was received late, disposes of his contention about the quantum of proof.

## MOTION FOR NEW TRIAL

Defendant sets forth three alleged errors of the trial judge which he contends entitle him to a new trial.

First, Belgrave asserts that the court erred in refusing to instruct the jury as follows:

> "You may infer from the Government's failure to call any postal in-

---

3. Of course, the defendant was not required to testify. Had he not taken the witness stand, his present argument might be more persuasive. The fact is, however, that he did say under oath he had never received the notice, not that it had come to his attention when it was no longer possible to report on April 10, 1970. Thus, he helped frame an issue for submission to the jury and in so doing eliminated other issues which conceivably could have been considered.

spector or other post office employee to testify as to the work record of the mailman serving 413 Concord Avenue, Chester, Pennsylvania, on or about March 19, 1970, and as to the record of mail theft during the same period, that if such a postal employee had been called, his testimony would have been unfavorable to the Government."

Counsel maintains that evidence was required as to the work record of the mailman serving the area where defendant's mother lived and as to the record of theft from mail boxes in that same vicinity during the time in question. Since the government failed to call a witness of this type, the defendant requested the "missing witness" charge, citing Graves v. United States, 150 U.S. 118, 121, 14 S.Ct. 40, 41, 37 L.Ed. 1021 (1893).

■■ In Graves, the Supreme Court reaffirmed the principle that "even in criminal cases, [the rule] is that, if a party has it peculiarly within his power to produce witnesses whose testimony would elucidate the transaction, the fact that he does not do it creates the presumption that the testimony, if produced, would be unfavorable." However, the court went on to say that such a presumption does not apply to every fact in a trial in which evidence might be offered. Id. at 121, 14 S.Ct. at 41. The rule is now well established that once the government has proved a prima facie case against a defendant, it has no duty to produce every other witness it might call at the peril of having the "missing witness" instruction given if it does not do so: See Lannom v. United States, 401 F.2d 504 (9th Cir. 1968); United States v. Llamas, 280 F.2d 392 (2nd Cir. 1960).

■ The Third Circuit Court of Appeals in United States v. Restaino, 369 F.2d 544, 547 (3rd Cir. 1966), set forth several factors which a court should con-sider in determining whether or not to give the "missing witness" charge. These include whether:

. . . (1) a potential witness is available, and (2) appears to have special information relevant to the case, so that (3) his testimony would not merely be cumulative . . . .

■ It should be noted that there was no evidence of any kind presented by defendant as to mail thefts or work records of postmen.[3] Thus, there is no basis for saying that the testimony of a postal official would elucidate the transaction and not be merely cumulative. Since there was no evidence to suggest the nondelivery of mail and since the prosecution was not required to produce every witness it might theoretically call, the "missing witness" instruction was properly omitted.

■ Moreover, the requested instruction was not a proper statement of the law because there was no reference to the relative availability of the witness or to the materiality of what he might have said. The rule as to a "missing" witness is correctly stated as follows:

"If it is peculiarly within the power of either the prosecution or the defense to produce a witness who could give material testimony on an issue in the case, failure to call that witness creates the presumption that his testimony would be unfavorable to such party. However, no presumption should be drawn by the jury where the witness is equally available to both parties, or where the witness' testimony would be merely cumulative.[4]

With the possibility of discovery and the subpoena power, there is no reason for presuming that a postal employee is peculiarly available to the prosecution. Further, there having been no evidence about thefts from the mail, the materiality of testimony from a postal employee

3. The only testimony related to the issue of mail theft was that of defendant's mother that her mailbox did not have a lock on it in 1970, and that on the advice of her postman she later put a lock on it. (N.T. page 84)

4. LaBuy, Jury Instructions in Federal Criminal Cases, Sec. 6.17.

would be doubtful. In view of the fact that the requested charge was not accurate, there was no obligation on the part of the trial judge to give it.

■ There is a related matter. Defendant alleges that the trial judge erred in his instruction that, although it was for the jury to decide, he would give little significance to one of defense counsel's assertions. During summation, counsel had said that the jury should question why the government did not produce a postal official to testify. It was well within the court's discretion to comment on defense counsel's argument and it was made abundantly clear to the jury members that they were to decide the weight of that particular matter as well as all others.

■ Second, defendant contends that the court erred in modifying defendant's fourth point for charge.

Although defendant asserts that this request for instruction was changed, in fact, the court merely supplemented it. As submitted the point was:

"If two conclusions can reasonably be drawn from the evidence, one of innocence and the other of guilt, the jury should adopt the one of innocence. [Defendant's Request for Points for Charge, page 2]

The court read this point exactly as written by defendant, but then explained that this rule applied where the two inferences to be drawn from the circumstances were equally reasonable. See United States v. Evans, 239 F.Supp. 554, 558 (E.D.Pa.1965), aff'd 359 F.2d 776 (3rd Cir.), cert. denied 385 U.S. 863, 87 S.Ct. 120, 17 L.Ed.2d 90 (1966); Commonwealth v. New, 354 Pa. 188, 221, 47 A.2d 450 (1946); Commonwealth v. Gibson, 201 Pa.Super. 573, 579, 193 A.2d 690 (1963). This additional statement by the court did not have the effect of charging the jury that it should apply the preponderance of the evidence standard, rather than the reasonable doubt standard, as defendant claims. The trial judge had explained at great length, in other portions of the charge, what the "reasonable doubt" standard was and how it should be applied. It cannot be seriously asserted that this one supplementary statement overcame all that had been said about reasonable doubt.

■ Finally, defendant contends that the court erred in denying defendant's motion to stay the proceedings until a jury panel containing a representative number of 18, 19 and 20 year olds could be summoned.

The thrust of defendant's argument is that the Twenty-sixth Amendment to the United States Constitution, which gives persons who have attained their 18th birthday the right to vote has not been fully implemented in the Jury Selection and Service Act of 1968, 28 U.S.C. § 1861 et seq. This law provides that juries in Federal District Courts shall be chosen primarily from the voter registration list. 28 U.S.C. § 1863(b)(1). While defendant contends it is now constitutionally required that persons from 18 to 21 years of age be considered for jury duty, the cases dealing with issues of this type have concluded that a defendant has no such right. See e. g., George v. United States, 196 F.2d 445 (9th Cir.), cert. denied 344 U.S. 843, 73 S.Ct. 58, 97 L.Ed. 656 (1952); United States v. Allen, 445 F.2d 849 (5th Cir. 1971); United States v. Kuhn, 441 F.2d 179 (5th Cir. 1971); United States v. Guzman, 337 F.Supp. 140 (S.D.N.Y. 1972); United States v. Gargan, 314 F.Supp. 414 (W.D.Wis.1970), aff'd sub nom. United States v. Gast, 457 F.2d 141 (7th Cir.) cert. denied, 406 U.S. 969, 92 S.Ct. 2426, 32 L.Ed.2d 668 (1972); and Commonwealth v. Fisher, 447 Pa. 405, 411, 290 A.2d 262 (1972).

Congress has recently enacted Public Law 92–269, 86 Stat. 117 (April 6, 1972) which changes the minimum age qualification for serving as a juror in Federal courts from 21 to 18 years of age. Sections 4(a) and (b) of that Act provide that it shall not affect jury wheels previously filled or juries previously impanel-

**692**

led. Since the absence of persons from 18 to 20 is not a matter of Constitutional proportions, this legislation disposes of defendant's argument.