James **HARDWICK**, Defendant Below, Appellant,

v.

**STATE** of Delaware, Plaintiff Below, Appellee.

No. 490, 2008.

Supreme Court of Delaware.

Submitted: March 11, 2009.
Decided: April 22, 2009.

Nicole M. Walker, Office of the Public Defender, Wilmington, Delaware for appellant.

Timothy J. Donovan, Jr., Department of Justice, Wilmington, Delaware for appellee.

Before STEELE, Chief Justice, BERGER and RIDGELY, Justices.

STEELE, Chief Justice.

Defendant–Appellant James Hardwick appeals from his Superior Court conviction on twenty nine counts of rape in the first degree and two counts of attempted rape in the second degree. Hardwick contends that the trial judge violated his federal and state constitutional rights to effective assistance of counsel and a fair trial when he denied a "missing witness instruction" request and thus prevented Hardwick from arguing to the jury that they could draw an inference adverse to the State's case from a witness's failure to appear at trial. We find no merit to Hardwick's argument and we affirm the judgment of the Superior Court.

### Facts and Procedural History

A grand jury indicted Hardwick on thirty six counts of rape in the first degree, two counts of attempted rape in the second degree, and two counts of continual sexual abuse of a child, as a consequence of having sexual relations with his underage stepdaughter, Alice Smith, and her friend, Peggy Lane.[1]

---

1. The parties assigned pseudonyms to the complaining witnesses, although each party used different names. Alice Smith and Peggy Lane are the State's pseudonyms.

In 2004, Hardwick married Alice's mother and moved into her home. Hardwick's adult nephew, Matthew, also stayed at the house occasionally.

Peggy testified that in July 2005, when she was thirteen years old, she spent the night at Alice's house. Late in the evening, she, Alice, Matthew, and Hardwick were in the living room. Matthew was sleeping on the sofa while Hardwick played on the computer. Peggy and Alice saw that Hardwick was watching pornography. Noticing that the girls were looking at the computer screen, Hardwick asked whether they liked what they saw. He then offered to teach Peggy how to do the acts portrayed in the pornography and invited the girls into the basement to look at Playboy magazines. According to Peggy, the girls agreed. Peggy alleged that, in the basement, Hardwick and the two girls engaged in a variety of sexual acts. Peggy also testified about another sexual incident that took place shortly thereafter at a townhouse in Delaware City involving her, Hardwick, and Matthew, as well as numerous occurrences of group sex involving Hardwick, Matthew, and the two girls. According to Peggy, she had sex with Hardwick at least 20 times on various occasions and she consented to all of those sexual encounters with Hardwick.

Alice, who was twelve in the summer of 2005, also testified at trial. She corroborated Peggy's testimony about the incident in her basement when Peggy and her stepfather first had sex, although she testified that only Peggy was interested in the pornography and she tried to talk Peggy out of engaging in sexual conduct with Hardwick. Alice also testified that she only overheard Peggy and Hardwick engaging in sexual conduct once at the Delaware City townhouse. Alice did not support Peggy's allegations of multiple encounters of group sex. She denied engaging in any

sexual activity with either Peggy or Hardwick on any of the occasions Peggy mentioned; however, she testified that Hardwick had forced her to perform oral sex on him at least once a month since she was ten years old.

In 2007, Peggy told her then boyfriend about her sexual encounters with Hardwick. At some point, Alice told Matthew about the sexual encounters with Hardwick, but she made Matthew promise not to tell anyone. According to Alice, Matthew seemed surprised. Someone notified the police and the police arrested Hardwick. The police interviewed both girls. During the police investigation, Detective Rubin of the Newark Police Department interrogated Matthew, the only other individual with information regarding the allegations. During that interrogation, Matthew claimed that Hardwick and he did not commit the alleged sexual acts. The State taped that interview and sent it to defense counsel. The defense hired a defense investigator to interview Matthew.

Defense counsel attempted to secure Matthew's appearance at trial and gave him a subpoena; however, defense counsel did not subpoena Matthew pursuant to 11 Del. C. § 3523, which would have required Matthew to appear under penalty of law. The State has yet to decide if it will charge Matthew. Although the State did not charge Matthew based on Peggy's allegations, the trial judge appointed counsel to represent him. Matthew did not appear at trial. Defense counsel twice asked the trial judge for permission to make a missing witness argument to the jury. During the first discussion, the trial judge noted his concerns about jury speculation, the 403 balancing test, and Matthew's Fifth Amendment right. When defense counsel reintroduced his argument for a missing witness instruction, the trial judge ruled that, under the circumstances, Matthew's

nonappearance could not be used against the State and any missing witness argument was inappropriate.

The Superior Court jury convicted Hardwick on twenty nine charges of rape in the first degree and two counts of attempted rape in the second degree on June 3, 2008. On August 29, 2008, the trial judge sentenced Hardwick to thirty one consecutive life sentences. Hardwick filed this appeal.

### Discussion

Hardwick contends that the trial judge violated his right to the effective assistance of counsel and a fair trial guaranteed by the Fifth and Sixth Amendments to the United States Constitution [2] and Article I, Section 7 of the Delaware Constitution.[3] He argues that the court improperly prevented him from presenting the jury with the argument that the State's failure to present Matthew as a witness allowed for an inference that, had he testified, Matthew would have provided evidence unfavorable to the State. We review evidentiary rulings for abuse of discretion.[4] To the extent that those evidentiary rulings introduce constitutional issues, we review de novo.[5]

Hardwick fails to articulate his constitutional claims, other than to say that the trial judge violated his right to effective assistance of counsel and fair trial by not giving a missing witness instruction thereby preventing Hardwick's counsel from effectively advancing the inference that Matthew's testimony would have been unfavorable to the State. To the extent Hardwick complains that he received ineffective assistance of counsel, this claim is not available on direct appeal.[6] We will not address Hardwick's unsupported and cursory allegations of constitutional violations because those allegations are not fully and fairly presented on appeal.[7]

We will address Hardwick's briefed allegation that the trial judge made an erroneous evidentiary ruling.[8] "A missing witness inference is permissible only where it would be 'natural' for the party to produce the witness if his testimony would be favorable."[9] In *Wheatley v. State*, we stated:

> Like all sound inferences, the missing witness inference is rooted in notions of common sense, specifically that where a party fails to call an available witness with important and relevant knowledge, it may be that he has something to fear in the witness' testimony. The strength of the inference will, of course, vary with the facts of each case, depending on how

2. U.S. Const. amend. V ("No person shall be ... deprived of life, liberty, or property, without due process of law"); U.S. Const. amend. VI ("In all criminal prosecutions, ... the accused shall enjoy the right to have the Assistance of Counsel for his defence.").

3. Del. Const. art. I, § 7 ("In all criminal prosecutions, the accused hath a right to be heard by himself or herself and his or her counsel, to be plainly and fully informed of the nature and cause of the accusation against him or her....").

4. *Jones v. State*, 940 A.2d 1, 9 (Del.2007).

5. *Id.*

6. *Wing v. State*, 690 A.2d 921, 923 (Del.1996) ("This Court ... will not hear a claim of ineffective assistance of counsel raised for the first time on direct appeal.").

7. *Ortiz v. State*, 869 A.2d 285, 290–91 (Del. 2005).

8. The parties do not make it clear whether the record reflects a request for an actual "missing witness" instruction or that counsel merely wished to argue the inference to the jury. We have assumed both.

9. *Wheatley v. State*, 465 A.2d 1110, 1111 (Del. 1983).

natural it would be for the party to have called the witness but for some apprehension over his testimony.... [10]

The missing witness inference reflects the situation where, "if a party has it peculiarly within his power to produce witnesses whose testimony would elucidate the transaction, the fact that he does not do it creates a presumption that the testimony, if produced, would be unfavorable." [11]

In *Demby v. State*, the defendant sought a missing witness instruction when the State failed to call a witness who had given two statements to police: one favorable to the defense, the other favorable to the State.[12] We explained that it was not "natural" for either the defense or the State to produce the witness in court because the witness's statements had been admitted without his in court testimony.[13] Thus, we explained that it was "unlikely that the jury would speculate why [the witness] did not testify and draw an unfavorable inference that was adverse to either Demby or the State by [the witness's] absence." [14] Moreover, we noted that because the witness was incarcerated, the average juror could conclude he was unavailable to testify.[15]

We have also noted that it would not be "natural" for the State to call a witness whose identity was privileged under Delaware Rule of Evidence 509[16] or one who was uncooperative.[17] We have also cited with approval *United States v. Brutzman*,

in which the Ninth Circuit held that a witness who invoked his privilege against self incrimination was not "peculiarly within the power of the government" and was unavailable to both parties.[18]

In this case, it was not "natural" for the State to call Matthew. Although Peggy's testimony indicated that Matthew was involved in the sexual conduct, Alice's testimony indicates that he was not. Thus, his presence, regardless of his testimony, would only further highlight the inconsistencies between the two girls' statements. He was not peculiarly within the State's power to call as a witness because his identity was known to both parties and he was equally available (or unavailable) to both parties. To compel Matthew's appearance at trial, the State would have had to employ the same out of state witness subpoena procedures, pursuant to 11 *Del. C.* § 3523, that were available to the defense. There is no evidence that the State intended to call Matthew as a witness or that the defense was mislead into believing that the State would secure Matthew's appearance and then was blindsided when Matthew failed to appear. Because it was not natural for the State to call Matthew, there would be no reason to believe that a jury would improperly speculate about Matthew's failure to testify. Accordingly, the trial judge did not abuse his discretion by concluding that Hardwick was not entitled to a missing witness instruction or

10. *Id.* (quoting *U.S. v. Tucker*, 552 F.2d 202, 210 (7th Cir.1977)).

11. *Demby v. State*, 744 A.2d 976, 978 (Del. 2000) (quoting *Graves v. U.S.*, 150 U.S. 118, 14 S.Ct. 40, 37 L.Ed. 1021 (1893)).

12. 744 A.2d 976, 978–79.

13. *Id.* at 979.

14. *Id.*

15. *Id.*

16. *Wheatley,* 465 A.2d at 1111.

17. *Murphy v. State*, 1997 WL 328603, at *2 (Del.).

18. *Demby,* 744 A.2d at 979 (citing *United States v. Brutzman,* 731 F.2d 1449, 1453–54 (9th Cir.1984) *overruled on other grounds by U.S. v. Charmley*, 764 F.2d 675, 677 n. 1 (9th Cir.1985)).

that he could argue the jury should "infer" Matthew's testimony would be unfavorable to the State.

### Conclusion

We conclude that the trial judge did not abuse his discretion by denying a missing witness instruction request. Failing to so instruct the jury did not deny Hardwick a fair trial. Thus, we affirm the judgment of the Superior Court.