## JORGENSEN v. YORK ICE MACHINERY CORPORATION.

No. 192, Docket 20495.

Circuit Court of Appeals, Second Circuit.
April 2, 1947.

Louis Rothbard, of Brooklyn, N. Y. (Ralph Stout, of New York City, of counsel), for appellant.

Joseph J. Brophy and William P. Cotter, both of New York City (Desmond T. Barry, of New York City, of counsel), for appellee.

Before L. HAND, AUGUSTUS N. HAND and CLARK, Circuit Judges.

L. HAND, Circuit Judge.

The plaintiff appeals from a judgment, entered on the verdict of a jury, dismissing his complaint in an action for personal injuries caused by the defendant's negligence; he also brings up an order denying his motion for a new trial. He raises three objections to the judgment: (1) that there was no evidence to support the verdict; (2) that the summation of defendant's counsel was prejudicial to a fair trial; and (3) that the judge's charge was wrong. The objection on which he most relies, however, is the misconduct of the jury in reaching a verdict. The evidence in brief was as follows. The plaintiff, Jorgensen, was a plumber and steamfitter in the employ of Jakobson's Shipyards in New York, and was helping install an ice machine in a United States transport under contract between the defendant and the United States Navy. The refrigerating plant consisted of two rooms: the

cooling or icing room, and the engine room where the refrigerant was compressed, which was a small room with no windows, communicating with the refrigerating room by two open doorways. The refrigerating gas, called "Freon," when ignited separates into three parts: chlorine and phosgene gases and hydrochloric acid—all extremely toxic to human beings. The piping in the engine room had to be gas-tight in order to prevent the escape of the "Freon," and the defendant employed a test for the purpose prescribed by the Navy, which was as follows. After the piping had been set up the pressure within it was reduced to 28 inches—four inches subatmospheric—and, if no sound of the influx of air was heard, it was assumed that there were only small leaks, if any. In order to detect these, the "Freon" was then introduced and a small lamp was applied to all the joints, which would detect any escape of the gas by showing a green or purple flame. If the gas escaped in large quantity, or if a large lamp was used, the "Freon" would dissolve into the toxic gases in dangerous quantity.

The plaintiff asserted first that this was a dangerous test, and second that it had not been properly carried out. The person in charge for the defendant was one, Trinka, who carried a small testing lamp of proper size; but who, the plaintiff swore, allowed him to bring with him into the engine room a blow-torch with a large flame. While he was in the engine room this blow-torch ignited a substantial amount of "Freon" which escaped and which suffocated him, injuring his lungs, and causing him to fall and hurt his shoulder. He produced a witness who corroborated his story. Trinka, on the other hand, swore that the plaintiff was not in the engine room at all, but in the adjacent refrigerating room; and that consequently there was no blow-torch in the engine room. The plaintiff introduced experts who swore that the test, adopted by the defendant and prescribed by the Navy, was not safe; and the defendant introduced experts who swore that it was. At the conclusion of the evidence the plaintiff did not move for the direction of a verdict, but went to the jury without objection; nor did he, even in his motion for a new trial, raise the question of the insufficiency of the evidence.

The second point was as follows. During the address of the defendant's attorney to the jury the plaintiff's attorney arose and said: "I want the record to show the statement was made to the jury that the plaintiff would have a claim against other parties and not against the defendant. I object to that strenuously and ask your Honor to instruct the jury to disregard it." To this the defendant's counsel answered: "That is what I said, and I take it that the only claim against us would be one based on negligence." Thereupon the judge said: "The jury will disregard the statement about any other party"; to which the plaintiff's attorney answered: "I only rose to make one objection to so much of his remarks as suggested a claim against a third party." The judge then repeated: "That will be disregarded," and the defendant's attorney concluded: "I think there is no doubt as to the clear statement made, that the claim against us must be based on only one thing, our negligence." This ended the matter; the plaintiff's attorney neither took any exception, nor in any other way indicated that he was not content with the judge's disposition of his protest.

The last objection was to the judge's refusal to charge the plaintiff's request that Trinka was an "interested witness." This came about as follows. The plaintiff's attorney asked the judge "to say to the jury that the witness Trinka is an interested witness. The Court: I think that the amount of interest of Trinka—Mr. Barry: Is to be weighed by the jury. The Court: Is to be weighed by the jury. He is a little different from the plaintiff. And by the statement that the plaintiff is an interested witness I do not mean that you must feel that that interest affects his testimony one way or the other—simply that he is seeking to recover some money. That is all." To this the plaintiff excepted.

On the motion for a new trial based, as we have said, upon the misconduct of the jury, the following appeared by affidavits. One, Murphy, was foreman of the jury,.

and, on the morning of the last day of the trial before the summations, he received word at his home that his son, a lieutenant in the Navy, had been killed in action. He applied to the clerk of the court to have the trial postponed for a day, but the clerk told him that this could not be done; and neither counsel nor the court learned of the occurrence and the jury was sent out. Murphy and one other of the panel swore that during their deliberations the jury stood seven to five for the defendant and that this vote never changed. All the jurors learned of the death of Murphy's son and of his wish to rejoin his family as soon as possible; and, as they thought it likely that there would be a deadlock, one or more of them wished to announce to the judge their inability to agree. However, since others thought that this would only result in their being sent back, someone suggested that, as seven were for the defendant and only five for the plaintiff, they should return a verdict for the defendant. This they did; it was a compromise to avoid further discussion and to let the foreman return to his home. Murphy's affidavit also declared that he was "much upset mentally" at the time, that he thought the plaintiff should have a verdict, and that he consented to a verdict for the defendant because he felt that he ought to return home as soon as possible. The plaintiff's attorney added an affidavit saying that another of the jurors confirmed these facts to him. The judge considered the motion on its merits, but decided that the affidavits contained nothing which would justify setting aside the verdict.

■ The appeal from the judgment plainly has no merit. The testimony was in a conflict which the jury alone could settle; it would have been the clearest possible error for the judge to direct them to find for the plaintiff, and leave to them only the issue of damages. Moreover, the plaintiff is in no position to raise the ques-

tion, even if there had been a question to raise, for he never asked the judge to take any of the issues from the jury; and it is universally ruled that one does not ask for such a direction but consents to go to the jury, may not later challenge the verdict for insufficiency: he has chosen his tribunal and must abide by its decision.[1]

■ The objection taken to the remark of the defendant's attorney that "the plaintiff would have a claim against other parties" is equally insubstantial, for, even assuming for argument that it might have been otherwise if the judge had not corrected it, the plaintiff was satisfied with the way in which he dealt with it. Not only did he take no exception—which is indeed no longer necessary[2]—but he got all he asked for, which was that the judge should "instruct the jury to disregard" the remark, and when he got it, he did not ask for anything more, but clearly indicated his contentment.

■ The last objection is to the charge as to how far Trinka's credibility was affected by his "interest." It is true that the judge did not tell the jury that Trinka was interested in such a way as to weaken his credibility, or indeed that he was "interested" at all; he merely implied that Trinka might be, and left them to decide how much weight they would give to it, if they so found. The objection presupposes a complete misunderstanding of the whole matter. The jury had to decide whether to believe Trinka; and, among the considerations that might determine them, was the fact that he was the defendant's employee and would have been found guilty of neglect, if the plaintiff succeeded. All this was obvious from the record, but it was in no sense the judge's duty to say how far the jury should discredit Trinka, or whether they should discredit him at all, any more than it was his duty to call to their attention any other part of the evidence. True, he was free to do so if

---

[1] Baten v Kirby Lumber Company, 5 Cir., 103 F.2d 272; Austin-Western Road Machinery Company v. Veal, 5 Cir., 115 F.2d 112; United States v. Harrell, 8 Cir., 133 F.2d 504, 506; Woodbridge v. DuPont, 2 Cir., 133 F.2d 904; Edwards v. Craig, 7 Cir., 138 F.2d 608; Flint v. Youngstown Sheet & Tube Co., 2 Cir., 143 F.2d 923; Itzkall v. Carlson, 2 Cir., 151 F.2d 647.

[2] Federal Rules of Civil Procedure, rule 46, 28 U.S.C.A. following section 723c.

he chose; just as he was free to comment on the evidence at large. His comments might have gone too far, though they did not; and the plaintiff does not complain of that; what he does complain of is that they did not go far enough, and that is not a valid objection.

There remains the only question on the appeal which has any substance: the order denying a new trial because of the supposed misconduct of the jury. Such an order, though discretionary, is indeed at times appealable,[3] although the occasions are extremely rare.[4] The whole subject has been obscured, apparently beyond hope of clarification, by Lord Mansfield's often quoted language in Vaise v. Delaval,[5] that no evidence of misconduct was competent which came from the jurors themselves, although, as judges have repeatedly pointed out, it is impossible to see from what source better evidence could be obtained.[6] On the other hand, it would be impracticable to impose the counsel of absolute perfection that no verdict shall stand, unless every juror has been entirely without bias, and has based his vote only upon evidence he has heard in court. It is doubtful whether more than one in a hundred verdicts would stand such a test; and although absolute justice may require as much, the impossibility of achieving it has induced judges to take a middle course, for they have recognized that the institution could not otherwise survive; they would become Penelopes, forever engaged in unravelling the webs they wove. Like much else in human affairs, its defects are so deeply enmeshed in the system that wholly to disentangle them would quite kill it. The discussion of Lamar, J., in McDonald v. Pless, supra,[4] well states the necessary compromise and that of Cardozo,

J., in Clark v. United States,[7] is akin, although the point decided was different.

All this has, however, nothing to do with what evidence shall be competent to prove the facts when the facts do require the verdict to be set aside, as concededly some facts do. The two decisions of the Supreme Court which we have cited, as well as its approach in United States v. Reid[8] and Hyde v. United States,[9] suggest it as not improbable that when the question arises in the future, the testimony of the jurors may be held competent, and that we shall no longer hear that they may not "impeach their verdict," when it is "impeachable" if what they say is true. Maybe not; judges again and again repeat the consecrated rubric which has so confused the subject; it offers an easy escape from embarrassing choices. In the case at bar at any rate we shall not dispose of the appeal in that way; we shall accept what the affidavits said, as did the judge, and like him we shall decide whether it requires the relief asked. Drunkenness, bribery, receiving incompetent documents, or privately interviewing a party, do require it; but there are many irregularities, which, however proved, do not, and among them is an agreement to abide by the vote of the majority.[10] Indeed, that is a no greater impropriety than a "quotient" verdict which the Supreme Court sustained in McDonald v. Pless, supra,[4] and the Eighth Circuit in Manhattan Oil Co. v. Mosby.[11] Not only ought we not upset the judge's discretion in refusing to grant a new trial for such a reason; but, had he granted the motion, and had his\order been in some unknown way appealable, we should not have sustained it.

Judgment affirmed.

---

[3] Mattox v. United States, 146 U.S. 140, 13 S.Ct. 50, 36 L.Ed. 917.

[4] McDonald v. Pless, 238 U.S. 264, 35 S.Ct. 783, 59 L.Ed. 1300.

[5] 1 Term Rep. 11.

[6] Wigmore § 2353.

[7] 289 U.S. 1, 53 S.Ct. 465, 77 L.Ed. 993.

[8] 12 How. 361, 366, 13 L.Ed. 1023.

[9] 225 U.S. 347, 383, 32 S.Ct. 793, 56 L.Ed. 1114, Ann.Cas.1914A, 614.

[10] Fabris v. General Foods Corporation, 2 Cir., 152 F.2d 660.

[11] 72 F.2d 840.