Lola S. KLIMES, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 14659.

United States Court of Appeals
District of Columbia Circuit.

Argued Dec. 3, 1958.

Decided Jan. 29, 1959.

Mr. Thomas B. Scott, Washington, D. C., for appellant.

Mr. John D. Lane, Asst. U. S. Atty., with whom Messrs. Oliver Gasch, U. S. Atty., and Carl W. Belcher, Asst. U. S. Atty., were on the brief, for appellee.

Before WILBUR K. MILLER, BASTIAN and BURGER, Circuit Judges.

BURGER, Circuit Judge.

A jury found appellant guilty of forgery, and upon being polled, all of the jurors assented to the verdict. Eleven days thereafter appellant filed a motion for a new trial based on an affidavit made out by a member of that jury directed to impeaching the verdict. The District Court entered judgment on the verdict, in effect denying the motion for a new trial on the grounds covered by the affidavit. This is an appeal from that judgment.

The juror makes three declarations in his affidavit which appellant urges as grounds for setting aside the verdict:

(1) " * * * one of the jurors said [during deliberations] yes this was like the pilferage case we [some of the jurors] had [when serving on another panel] concerning the YMCA * * *."

(2) "one of the panel stated * * * in all probability she [appellant] will get probation anyway and will not have to go to prison."

(3) "At no time during the deliberations did I have an abiding conviction of the defendant's guilt nor do I now have."

In 1785 Lord Mansfield laid down the rule that a juror may not be heard to impeach his own verdict. [1] Mansfield probably chose this particular form for his statement of the rule because it was corollary to his earlier doctrine that a witness may not be heard to allege his own turpitude: *nemo turpitudinem suam allegans audietur*.[2] As Wigmore points out, this doctrine has completely disappeared in its other contexts, but it has led to much confusion in cases where a juror has sworn that his own verdict was irregular.

■ Courts have again and again ostensibly endorsed Mansfield's rule against the use of jurors' statements, but it appears that, almost without exception, where it has been said that a juror's affidavit or testimony is "inadmissible," the court has in fact considered what the juror has said but rejected it as insufficient.[3] Judge Learned Hand has criticized this approach as "an easy escape from embarrassing choices."[4] The crux of the problem would be more clear if we regard the issue not as the *admissibility* of the juror's affidavit but rather its *sufficiency* for purposes of impeaching the verdict. We should not *dispose* of this case on a ground of admissibility; rather we should view it as Judge Hand did and consider what the affidavit says, and assuming its truth for these purposes then decide whether it should lead to reversal.

■■ Wigmore sets out as elements which will *not* affect a verdict: [5]

(1) that a juror was influenced by an improper remark of a fellow juror;

(2) that a juror assented to a verdict under a belief that the judge would use clemency;

(3) that a juror who assented to a guilty verdict did not fundamentally believe in the defendant's guilt.

Each of the objections raised by the appellant in this case fits precisely into one of these categories, and hence the affidavit is insufficient to impeach the verdict. We therefore hold that the facts alleged in the affidavit, accepted as true, do not require setting aside the judgment of conviction.

We have also examined the other contentions of appellant: that the evidence is not sufficient to sustain the verdict, that prejudicial evidence was erroneously admitted, that the instructions were improper, and that the appellant's arrest was illegal. We find no error.

Affirmed.

1. Vaise v. Delaval, 1 T.R. 11, 99 Eng.Rep. 944 (K.B.1785).

2. 8 Wigmore, Evidence § 2352 (3d ed. 1940): "Its chief application was to forbid the drawer of commercial paper from proving usury or other illegal consideration, and to forbid similar occasional sorts of testimony; but, after two generations of controversy, these important aspects of it, *together with the principle at large, were utterly repudiated, both in England and America*."

3. See, e. g., McDonald v. Pless, 1915, 238 U.S. 264, 35 S.Ct. 783, 59 L.Ed. 1300; United States v. Reid, 1851, 12 How.

361, 53 U.S. 361, 13 L.Ed. 1023; Jordon v. United States, 1936, 66 App.D.C. 309, 87 F.2d 64, certiorari denied 1938, 303 U.S. 654, 58 S.Ct. 762, 82 L.Ed. 1114; United States v. Furlong, 7 Cir., 194 F.2d 1, certiorari denied 1952, 343 U.S. 950, 72 S.Ct. 1042, 96 L.Ed. 1352; Williams v. State, 1954, 204 Md. 55, 102 A.2d 714; People v. Pizzino, 1945, 313 Mich. 97, 20 N.W.2d 824.

4. Jorgensen v. York Ice Mach. Corp., 2 Cir., 160 F.2d 432, 435, certiorari denied 1947, 332 U.S. 764, 68 S.Ct. 69, 92 L.Ed. 349.

5. Op. cit. § 2349.