George P. FRITZ, Plaintiff-Appellee,

v.

BOLAND & CORNELIUS, a co-partnership, Defendant-Appellant.

No. 181, Docket 26500.

United States Court of Appeals
Second Circuit.

Argued Jan. 18, 1961.

Decided Feb. 17, 1961.

Edward J. Desmond, Buffalo (Desmond & Drury, Buffalo, on the brief), for plaintiff-appellee.

Fenton F. Harrison, Buffalo (Coffey, Heffernan & Harrison, Buffalo, on the brief), for defendant-appellant.

Before MEDINA, FRIENDLY and SMITH, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge.

Defendant Boland & Cornelius, a partnership in the shipping business on the Great Lakes, appeals from a judgment in the amount of $21,811.58 awarded for personal injuries to George P. Fritz. Plaintiff, a former employee of Boland & Cornelius, claimed to have injured his knee because of a fall suffered on the deck of defendant's ship Elba, which fall allegedly resulted from the negligence of defendant in allowing the ship's deck to remain strewn with iron scrap, and from said vessel's unseaworthy condition from the same cause.

Negligence, unseaworthiness, the existence of any injury, damages and virtually every other factual issue were hotly contested at trial. Defendant's shotgun attack on the judgment includes claimed error in confusing instructions to the jury, improper summation and argument by plaintiff's counsel, leading questions on direct and inflammatory questions on cross examination, erroneous evidentiary

rulings and the excessiveness of the verdict. These claims are not supported in the trial record or by any acceptable proof aliunde. They require no extended discussion. The court can find no prejudicial or reversible error in the conduct of the trial. The only such question raised at the time, during summation, was promptly and forcefully handled by the trial judge. There was some leading of plaintiff, mainly by the judge, well within the bounds of his discretion in evoking the full story of the fall. Assuming, without deciding, that we have power to review the amount of the verdict, the verdict is not excessive in light of plaintiff's substantial claims of lost wages prior to the time of trial.

Defendant also asks for a reversal on the ground of the "improper conduct" of a juror, James T. Mackey. In the course of *voir dire*, defendant's attorney did not ask that juror if he ever had a similar injury to the one claimed in the present case. Shortly after the trial of the case, defendant's attorney received an anonymous letter stating that the "foreman of the Case last week lied to you because he had an accident to his nee (sic)" and that "I knew he (sic) would be for a large damages." Mr. Mackey, in the course of *voir dire* for a later case, admitted that he too had "had trouble with his knee" and stated that he "shouldn't have set on that jury." Mackey also indicated, at that time, that he was ignorant of the fact that the present case involved a knee injury until after he was impaneled.

██ It is defendant's theory that he is absolutely entitled to twelve impartial jurors to try his case, and that Mackey's answers in the later case prove that he was not impartial here. Relying mainly upon Consolidated Gas & Equipment Co. of America v. Carver, 10 Cir., 1958, 257 F.2d 111, defendant argues that Mackey was an "incompetent" juror; that his presence "infected" the jury; and that, in effect, the jury's verdict was a nullity because there were only eleven, rather than twelve, impartial jurors.

Defendant's characterization of juror Mackey's conduct as "improper" is totally unsubstantiated. There is not a hint that his conduct prior to or in the jury room deliberations was at all improper— or prejudicial to Boland & Cornelius. Apparently he frankly and truthfully answered all questions on *voir dire*. He did not know at that time the case involved an alleged knee injury. He had every right to believe, after the pre-impaneling questioning, that he was properly qualified as a juror; no inference of impropriety can be drawn from his failure to later inform the court and the parties of his own injury. The anonymous letter received by defendant's attorney is of absolutely no value; the inherent unreliability of such things is further emphasized in this case by the virtual illiteracy reflected in the letter and its serious factual misstatements. (As noted above, juror Mackey lied to no one because he was not asked about any prior injuries; further, Mr. John J. Radice, not Mackey, was foreman of the jury.) Defendant attempts to infer prejudice from Mackey's later remark that he "shouldn't have set on that jury." Such reliance is misguided. It is entirely likely and probable that in the *voir dire* of personal injury cases subsequent to the instant case Mr. Mackey had noted defense attorneys' preoccupation, in their questions and challenges, with prior injuries of jurors; indeed, that was the immediate backdrop of his allegedly significant statement. Moreover, the statement sounds very much like one from an honest and conscientious juror; no inference of improper conduct can be drawn from it.

Stripped of the evocative language of actual "improper conduct," defendant's claim rests solely on his alleged absolute right to *twelve competent* jurors. His argument is based on the theory that, because Mackey could probably have been challenged for cause, he was therefore an "incompetent" juror, thereby rendering voidable any verdict rendered by the jury. It is true that the language of the court in the Carver case, supra, at

pages 115–116, is couched largely in terms of the competency of the juror in question. However, that case concerned a situation where a juror mistakenly stood mute in response to a question, to the whole panel, as to whether any of the prospective jurors had ever been involved in a lawsuit to recover for personal injuries. The principal basis of the reversal of that jury verdict was the misleading and deceiving of defendant's attorney; if the question had been truthfully answered, defendant certainly would have challenged that particular juror.

In the present case, defendant's counsel failed to inquire if juror Mackey had any prior injuries. There is absolutely no evidence of *actual* prejudice to defendant. We need not on this record determine what, if any, inquiry could be made into the jury deliberations. In the absence of any attempt at a showing that Mackey's presence on the jury somehow wrongfully denied Boland & Cornelius a fair trial, and in view of the fact that defendant's counsel thought the presence of a similar injury too unimportant to inquire about on *voir dire*, he should not now be allowed to upset a jury verdict reached, so far as the record shows, after proper deliberation.

Although the Carver case is distinguishable on the facts, the court there used language which might appear to call for the same result in this case. We interpret that decision only to govern situations where a prospective juror has either lied or failed to give a truthful answer on *voir dire*, or in some way concealed a known disqualification. In such circumstances an inference of prejudice is perhaps warranted. Invocation of the defendant's concept of "competency" —and its requirement of twelve such "competent" jurors—into the factual setting of this case would result in unwarranted reversals of perfectly fair jury verdicts and would inject an unjustifiable degree of instability into the jury system. Compare McDonald v. Pless, 238 U.S. 264, 35 S.Ct. 783, 59 L. Ed. 1300; Klimes v. United States, 1959,

105 U.S.App.D.C. 23, 263 F.2d 273, Jorgensen v. York Ice Machinery Corp., 2 Cir., 1947, 160 F.2d 432.

The judgment of the District Court is affirmed.