**UNITED STATES of America**

v.

**Edward W. REED.**

**Crim. No. 12580.**

United States District Court,
D. Connecticut.
April 27, 1970.

—◆—

J. Daniel Sagarin and Richard P. Crane, Jr., Ass't U. S. Attys., New Haven, Conn., for government.

William F. Tiernan, Jr., New Haven, Conn., for defendant.

TIMBERS, Chief Judge.

Defendant Edward W. Reed, having been convicted after a jury trial and having been sentenced to 25 years imprisonment for armed bank robbery, 18 U.S.C. § 2113(d) (1964), has moved for a new trial pursuant to Rule 33, Fed.R. Crim.P. The motion is denied.[1]

While all grounds for the motion have been carefully considered and rejected in light of the entire record, only one ground warrants brief mention, that set forth in paragraph 7 of the motion, namely, that, based on a purported "statement" by the son of Juror No. 2, said juror "indicated his belief in the defendant's guilt prior to the conclusion of the trial."

### FACTS

Attached to the motion for a new trial is the following purported statement dated March 15, 1970 by Michael Bonomo, who was the son of Juror No. 2 at the trial of this case:[2]

"3/15/70

I Michael Bonomo state the following is a true statement to the best of my knowledge.

In the later part of February during a family conversation between me and him, he informed me he had been called for jury duty by the Federal Government. During a later conversation my father told me he was a juror on Edward Reeds bank robbery case. Because I had been in trouble before my father discussed parts of the case with me, warning me of the ills of crime. He stated during one of the conversations he thought Reed might have stole to help his family. In my opinion my father had reached a decission of Reeds guilt before the end of the trial.

 Michael Bonomo
Witnesses: Donald F. Preston
 John Reed
 Carl White"

The facts regarding the obtaining of this statement, as disclosed at the April 6 hearing on defendant's motion for a new trial, may be briefly summarized. On February 27, three days after the instant bank robbery trial began at Bridgeport, Michael Bonomo, son of Juror No.

---

1. This 9 day trial began February 24, 1970 and concluded March 10 with the return of the jury's verdict. Sentence was imposed on March 16. Defendant's motion for new trial was filed on March 24 and argued on April 6. The motion was timely filed and claimed for argument in accordance with the Court's order at the time of sentencing (Transcript of March 16, 1970, pp. 3–4).

2. A Xerox copy of the original handwritten "statement" of Michael Bonomo is attached to this Memorandum of Decision and marked Exhibit A, the original being attached to the motion for new trial.

**453**

2, was arrested upon state charges of possession of narcotics and possession of narcotics with intent to sell. He was held at the Bridgeport Division of the Connecticut Correctional Center for lack of bail. Michael Bonomo's father, Patrick Bonomo, visited his son at the Correctional Center sometime during the bank robbery trial. Also being held at the Correctional Center while Michael Bonomo was there were the three witnesses to the Michael Bonomo statement of March 15, i. e. Donald F. Preston, Carl White and John T. Reed, each of whom was being held, inter alia, in connection with charges pending against him in this Court.[3] Michael Bonomo's statement of March 15 was prepared by another inmate and was copied by Michael Bonomo from that inmate's notes. The statement was referred to as an "affidavit" by defendant's counsel at the

time of sentencing on March 16; at that time the Court directed that the matter be brought on by "an appropriate motion" to which the government should be given "an opportunity to respond"; and the Court further stated that "it would be advisable to file this motion as promptly as possible" (Transcript of March 16, 1970, pp. 3–4).

OPINION

At the outset it should be noted that the Michael Bonomo statement of March 15, 1970 is *not an affidavit;* nor is it otherwise in evidentiary form. Indeed, there is grave doubt that the "statement" attributed to Michael Bonomo was ever made by him; and there is no evidence whatever that any statements therein attributed to Juror No. 2, Patrick Bonomo, were ever made by the juror.[4]

3. The charges upon which Preston, White and John T. Reed (brother of Edward W. Reed, defendant herein) were being held are as follows:

*Preston*

Crim.No. 12636 (interstate sale or receipt of stolen motor vehicle, 18 U.S.C. § 2313).

[Preston was sentenced on March 30, 1970 upon his plea of guilty.]

*White*

Crim.No. 12604 (bank robbery, 18 U.S.C. §§ 2113(a), (b) and (d)).

[White was convicted in this case by a jury verdict returned April 24, 1970.]

*John T. Reed*

Crim.No. 12577 (bank robbery, 18 U.S.C. §§ 2113(a) and (b)).
Crim.No. 12603 (bank robbery, 18 U.S.C. §§ 2113(a), (b) and (d)).

[John T. Reed was convicted in Crim. No. 12577 by a jury verdict returned January 21, 1970. Before sentence could be imposed, however, he escaped from the Correctional Center at Bridgeport on April 5, 1970, and is a fugitive. At the time of his escape, he was awaiting trial on a first degree murder charge in the Superior Court for New Haven County.]

4. As a result of an investigation recommended by defendant and his attorney when this matter was first brought to the attention of the Court (Transcript of March 16, 1970, pp. 2–3), agents of

the FBI interviewed Michael Bonomo at the Bridgeport Correctional Center on April 3, 1970. The FBI report of this interview (Court Exhibit A–1 for identification) was disclosed to defendant's counsel at the time of the April 6 hearing on defendant's motion for new trial. Insofar as it relates to the authenticity of Michael Bonomo's statement of March 15, 1970, the FBI report of interview states:

"* * *

MICHAEL BONOMO said that sometime in February, 1970, while he was living at home, he was aware of the fact that his father was serving as a juror and that the only information he had was that the case pertained to a robbery matter. He stated that his father had refused to discuss the case in any manner and explained to him and other members of the family that Judge TIMBERS instructed that he not discuss the case with anyone including members of his family, that he should not listen to any television or radio broadcasts concerning the case and that he should not read any newspaper or magazine accounts of the trial. MICHAEL stated that he has absolutely no information indicating that his father had violated these instructions in any way.

* * *

MICHAEL stated that his father had frequently discussed with him the 'ills of crime' but that he never discussed

454

Solely for the purpose of testing the validity of defendant's allegations set forth in paragraph 7 of his motion for a new trial, the Court will assume (contrary to the established facts) (1) that Michael Bonomo's statement of March 15, 1970 is, or could be made, in affidavit or other evidentiary form; (2) that Michael Bonomo would testify that his father had "indicated his belief in the defendant's guilt prior to the conclusion of the trial"; and (3) that Patrick Bonomo, Juror No. 2, would testify that he entertained a belief in the defendant's guilt prior to the conclusion of the trial.

■ The Court holds as a matter of law that such facts, even if proven, would not constitute grounds for the granting of a motion for a new trial pursuant to Rule 33, Fed.R.Crim.P.

■ Few doctrines are more firmly established in our jurisprudence than the

proposition that the validity of a verdict may not be attacked, and hence a new trial will not be granted, upon a showing of the mental operations and emotional reactions of jurors in reaching a particular verdict. Rules of Evidence for the United States District Courts and Magistrates, Preliminary Draft, March 1969, Rule 6–06(b); [5] ABA Project on Minimum Standards for Criminal Justice, Trial By Jury, Approved Draft 1968, § 5.7(a); see McDonald v. Pless, 238 U.S. 264, 267 (1915); United States v. Grieco, 261 F.2d 414 (2 Cir. 1958) (per curiam), cert. denied, 359 U.S. 907 (1959); Rotondo v. Isthmian Steamship Co., 243 F.2d 581, 583 (2 Cir. 1957); Jorgensen v. York Ice Machinery Corp., 160 F.2d 432, 435 (2 Cir. 1947).

ORDER

ORDERED that defendant's motion for a new trial in all respects is denied.

that subject in connection with his jury duty. He said that his father never once mentioned the name EDWARD REED to him and that no remark had been made by his father indicating that REED might have stolen to help his family.

MICHAEL said that he has no reason whatsoever to believe that his father had reached a decision concerning REED's guilt before the end of the trial as he alleged in the affidavit.

MICHAEL explained that the affidavit which he furnished was not in his own words but had been prepared by another inmate whom he could not or would not identify and that he had copied it from that inmate's notes."

Since Court Exhibit A–1 for identification relates to a pending investigation by the FBI to determine whether other violations of federal law have occurred, this exhibit, except to the extent set forth above, has been ordered sealed and impounded, subject to examination by any appellate court upon appeal from the conviction herein.

5. Rule 6–06(b) provides:
 "(b) INQUIRY INTO VALIDITY OF VERDICT OR INDICTMENT. Upon an inquiry into the validity of a verdict or indictment, a juror may not testify concerning the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indict-

ment or concerning his mental processes in connection therewith. Nor may his affidavit or evidence of any statement by him indicating an effect of this kind be received for these purposes."

While this "rule" of course is no more than a proposed rule included in the Advisory Committee's preliminary draft of proposed Rules of Evidence for the United States District Courts and Magistrates and will not become effective until acted upon by the Judicial Conference of the United States and by the Supreme Court of the United States, it fairly can be said, I believe, to represent a consensus of informed opinion upon this particular matter—as to which, after all, there is virtual unanimity among the authorities. See the following relevant portion of the Advisory Committee's Note to Rule 6–06(b):

"The mental operations and emotional reactions of jurors in arriving at a given result would, if allowed as a subject of inquiry, place every verdict at the mercy of jurors and invite tampering and harassment. See Grenz v. Werre, 129 N.W.2d 681 (N.D.1964). The authorities are in virtually complete accord in excluding the evidence. Fryer, Note on Disqualification of Witnesses, Selected Writings on Evidence and Trial 345, 347 (Fryer ed. 1957); Maguire, Weinstein, et al., Cases on Evidence 887 (5th ed. 1965); 8 Wigmore § 2349 (McNaughton Rev. 1961)."

455

3/15/70

I Michael Bonomo state the following is a true statement to the best of my knowledge.

In the later part of February during a family conversation between me and him, he informed me he had been called for jury duty by the Federal Government. During a later conversation my father told me he was a juror on Edward Reeds bank robbery case. Because I had been in trouble before my father discussed parts of the case with me, warning me of the ills of crime. He stated during one of the conversations he thought Reed might have stole to help his family. In my opinion my father had reached a decission of Reeds guilt before the end of the trial.

Michael Bonomo

WITNESSES: Donald F. Preston
John Reed
Carl White

CA19313