**UNITED STATES of America**

v.

**Rayfield WILSON, Appellant.**

**No. 75–1337.**

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 21, 1975.

Decided April 15, 1976.

John E. Haley, Washington, D. C. (appointed by this court), for appellant.

Timothy J. Reardon III, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry and Stuart M. Gerson, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before LEVENTHAL and MacKINNON, Circuit Judges, and McMILLAN,* United States District Judge for the Western District of North Carolina.

Opinion for the court filed by Circuit Judge MacKINNON.

MacKINNON, Circuit Judge:

On August 22, 1974, appellant Rayfield Wilson was indicted for five separate narcotics offenses allegedly committed in 1974 on March 20th (count 1), April 2d (count 2), June 7th (count 3) and June 18th (counts 4 and 5). The first three counts charged unlawful distribution of heroin in violation of 21 U.S.C. § 841(a), while the fourth and fifth counts respectively charged unlawful possession of heroin, with intent to distribute in violation of section 841(a) and unlawful possession of the same heroin in violation of D.C.Code § 33–402.

The alleged offenses were discovered by an undercover agent. As a result of his activities a complaint was filed on July 24, 1974 charging that Wilson, on April 2, 1974 for $360, sold four tinfoils containing a white powder of the opiate group to Special Agent James Quander of the Drug Enforcement Administration. On the day the complaint was filed Wilson was brought before the United States Magistrate and informed thereof and of his rights. At a preliminary hearing held on August 7, 1974, the United States Magistrate found probable cause to hold Wilson for the grand jury and certified the transcript to the United States District Court on August 13, 1974. The indictment was returned on August 22, 1974.

On January 15, 1975, just prior to trial, the United States Attorney filed an information reciting that Wilson had two prior 1969 convictions under the Harrison Narcotics Act, 26 U.S.C. § 4704(a), and was, therefore, subject to the increased punishment provided for by 21 U.S.C. § 841. The next day, January 16, 1975, a jury returned a verdict finding appellant guilty on counts 1, 2, and 3 and not guilty on counts 4 and 5. Then, according to appellant's brief:

> After the verdict had been rendered, one juror, Wilson R. Sistrunk, communicated with the Jury Commissioner's office and indicated that he did not feel that the verdict reflected his view of the defendant's guilt. The trial judge was informed of this development and summoned the Assistant United States Attorney and appellant's trial counsel to chambers on January 20, 1975. Mr. Sistrunk had been requested to attend, but did not appear. The juror subsequently called the trial judge's secretary and explained that weather and car problems had interfered with his attendance. However, the trial judge made *no further attempts to question the juror* regarding his statements or to ascertain if there had been any undue influence upon him.

Appellant's Br. 4. Subsequently, appellant's trial counsel, on February 18, 1975, moved for a new trial alleging:

---

* Sitting by designation pursuant to 28 U.S.C. § 292(d).

At the request of defense counsel, the entire jury was polled and all twelve members indicated that the foreman's statement accurately reflected their votes as to the guilt or innocence of the defendant.

After the jury was discharged one juror, Wilson R. Sistrunk communicated with the jury commissioner's office and indicated that he did not feel the verdict was correct and it did not reflect his view of the defendant's guilt. The Honorable John H. Pratt was informed of this and summoned Assistant United States Attorney John Bayley [*sic*] and Joan M. McIntyre, the defense counsel, to his chambers on January 20, 1975. Mr. Sistrunk had been requested to attend but did not appear. This juror subsequently called Judge Pratt's secretary and explained that weather and car problems had interfered with his attendance at the meeting. In talking with Mrs. McTiernan, Mr. Sistrunk indicated that the verdict was not his in regard to counts two and three and that he was dissatisfied with the orientation that jurors receive in the United States District Court for the District of Columbia.

In view of the fact that neither attorney has, as is proper, spoken to the juror and the information given to the court has been entirely of a hearsay nature, it is requested that Wilson R. Sistrunk be summoned into open court and there questioned by the court regarding his statements that the verdict as rendered did not reflect his vote, and to ascertain if there was any undue influence upon him or any other juror to reach the verdict. If the evidence then adduced is sufficient, the defendant requests a new trial. [Paragraph enumeration omitted.] The trial court denied this motion on February 20, 1975 and on March 12, 1975 on counts 1, 2 and 3 entered its judgment of conviction and imposed a sentence of three (3) years' to nine (9) years' imprisonment, said sentence to also run concurrently with a sentence then being served. Following the service of this sentence, which was to be served in a federal institution, appellant was to be placed on parole for a term of six (6) years in accordance with 21 U.S.C. § 841(a).

## I

For his first point, appellant contends that the delay between the alleged detection of his criminal activity and the notice to him of the Government charges constituted a denial of due process of law (Appellant Br. 5–10) and asserts reliance on *Woody v. United States*, 125 U.S.App.D.C. 192, 370 F.2d 214 (1966); and *Worthy v. United States*, 122 U.S.App.D.C. 242, 352 F.2d 718 (1965). Actually, the initial notice that Quander was a Special Agent and that appellant was charged with distributing narcotics was given to Wilson on July 24, 1974, within 36 days of the date of the last offense charged in the indictment that was later returned. Such a short lag, following an undercover operation that embraced offenses extending only from March to July of the same year, is clearly not unreasonable. We find no merit whatsoever in the point.

## II

Second, appellant contends that the trial court committed reversible error when it refused his request for a missing witness instruction because of the unavailability at trial of one Wiggins, who had been a special employee of the Drug Enforcement Administration, allegedly present at certain of the transactions, but whose whereabouts at the time of trial were unknown to the Government and to the defendant. The record, however, discloses that Wiggins was not peculiarly available to the Government and that the Government had lost contact with him, could not at the time of trial locate him, and consequently, did not have the power to produce him (Tr. 114–16). It is also significant that appellant worked with Wiggins as a maintenance man (Tr. 121) and hence had at least as much, if not more, ability to reach Wiggins as did the Government. Yet he made no effort to locate Wiggins, so he could testify for him (Tr. 133–34). The trial court therefore properly

denied the request. *Graves v. United States*, 150 U.S. 118, 121, 14 S.Ct. 40, 41, 37 L.Ed. 1021, 1023 (1893); *United States v. Ferguson*, 162 U.S.App.D.C. 268, 275, 498 F.2d 1001, 1008, *cert. denied*, 419 U.S. 900, 95 S.Ct. 183, 42 L.Ed.2d 145 (1974); *United States v. Young*, 150 U.S.App.D.C. 98, 103–04, 463 F.2d 934, 939–40 (1972).

## III

As his third basis of appeal, appellant asserts that the trial court should have summoned juror Sistrunk and examined him to ascertain whether any "undue influence" affected the verdict and "determine the sufficiency of any charges made by the juror as possible grounds for ordering a new trial." Appellant Br. 20.

■ The federal courts do not adhere to a rule of strict exclusion of testimony by a juror in impeachment of his own verdict. *McDonald v. Pless*, 238 U.S. 264, 268–69, 35 S.Ct. 783, 784–785, 59 L.Ed. 1300, 1302 (1915); *Mattox v. United States*, 146 U.S. 140, 148, 13 S.Ct. 50, 52, 36 L.Ed. 917, 92 (1892); *Government of Virgin Islands v. Gereau*, 523 F.2d 140, 148–49 (3d Cir. 1975); *Klimes v. United States*, 105 U.S.App.D.C. 23, 24, 263 F.2d 273, 274 (1959); *Jorgenson v. York Ice Machinery Corp.*, 160 F.2d 432, 435 (2d Cir.), *cert. denied*, 332 U.S. 764, 68 S.Ct. 69, 92 L.Ed. 349 (1947).

■ In *Government of Virgin Islands v. Gereau, supra*, the Third Circuit admirably encapsulates the principles involved here. Citing *McDonald, supra*, and other authorities, the Court wrote, concerning the rule of exclusion of a juror's impeachment testimony:

> The rule was formulated to foster several public policies: (1) discouraging harassment of jurors by losing parties eager to have the verdict set aside; (2) encouraging free and open discussion among jurors; (3) reducing incentives for jury tampering; (4) promoting verdict finality; (5) maintaining the viability of the jury as a judicial decision-making body. *McDonald, supra; United States v. Dioguardi*, 492 F.2d 70 (2d Cir.), *cert.*

*denied*, 419 U.S. 829 [95 S.Ct. 49, 42 L.Ed.2d 53] (1974); *Miller v. United States*, 403 F.2d 77 (2d Cir. 1968). Courts applying the rule were, however, early aware that any flat prohibition against receiving such testimony contravened another public policy: that of "redressing the injury of the private litigant" where a verdict was reached by a jury not impartial. *McDonald, supra*, 238 U.S. [264] at 267, 35 S.Ct. at [783] 784 [, 59 L.Ed. 1300]. In order to accommodate these conflicting policies, *Miller, supra*, at 82, the courts, often continuing to recite the canon of "no impeachment," evolved a more flexible rubric. This latter rule interdicted reception of a juror's evidence only where it was offered "to show matters which essentially inhere in the verdict itself." *Hyde v. United States*, 225 U.S. 347, 384, 32 S.Ct. 793, 808, 56 L.Ed. 1114 (1912); *Domeracki v. Humble Oil & Refining Co.*, 443 F.2d 1245 (3d Cir.), *cert. denied*, 404 U.S. 883, 92 S.Ct. 212, 30 L.Ed.2d 165 (1971). Such matters include both "the mental process of any juror or of the jury in arriving at a verdict," *Capella v. Baumgartner*, 59 F.R.D. 312, 315 (S.D.Fla.1973), and the method by which the verdict is reached. *McDonald, supra, Hyde, supra; Domeracki, supra.* See also *Note: Impeachment of Jury Verdicts*, 53 Marquette L.Rev. 258, 269 (1970). The same accommodation of policies produced the general rule's major exception, which provides that " '[a] juryman may testify to any facts bearing upon the question of the existence of any extraneous influence, although not as to how far that influence operated upon his mind.' " *Mattox v. United States*, 146 U.S. 140, 149, 13 S.Ct. 50, 53, 36 L.Ed. 917 (1892), quoting *Woodward v. Leavitt*, 107 Mass. 453. "Extraneous influence" has been construed to cover publicity received and discussed in the jury room, consideration by the jury of evidence not admitted in court, and communications or other contact between jurors and third persons, including contacts with the trial judge outside the presence of the defendant and his counsel. By contrast, evidence of dis-

cussions among jurors, intimidation or harassment of one juror by another, and other intra-jury influences on the verdict is within the rule, rather than the exception, and is not competent to impeach a verdict.

*Government of Virgin Islands v. Gereau, supra,* at 148–49 (Footnotes omitted). Provided the juror's impeachment testimony is of the permissible extraneous influence category, the question ceases to be one of admissibility and becomes one of sufficiency. *Government of Virgin Islands v. Gereau, supra,* at 150; *Klimes, supra,* at 274.

However, the decision of how to proceed with a juror's initial claim of irregularity is a matter that is vested in the trial judge. It is within his discretion to determine what manner of hearing, if any, is warranted. Here, we are told that the trial judge had a second-hand report of a contact from a person claiming to be juror Sistrunk. The judge scheduled a meeting, with the juror and counsel for both sides to be present, to explore the situation. No juror appeared. The juror apparently called with an excuse for his absence, but then did not appear again or repeat his story, and appellant counsel subsequently chose not to subpoena or depose the juror, which we consider he should have done. The jury had been polled. There is no indication of outside influence on the juror. On the record before this court, it cannot be said that the trial judge transgressed his discretion. If appellant desires to press the matter further it is incumbent upon him to make a proper record in the District Court which he is permitted to do in a proceeding under 28 U.S.C. § 2255.

The action of the District Court in this case is affirmed.

*Judgment accordingly.*