

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-0803-11

**THOMAS MCQUARRIE, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE THIRTEENTH COURT OF APPEALS
### GONZALES  COUNTY

COCHRAN, J., filed a dissenting opinion in which KELLER, P.J., and PRICE and WOMACK, JJ., joined.

### O P I N I O N

I respectfully dissent.  The statements in the juror affidavits offered in this case may

constitute "extraneous prejudicial information" under Federal Rule 606(b), but the Texas

Supreme Court deliberately did not adopt that exception to the general prohibition against

jurors impeaching their own verdict in Texas Rule of Evidence 606(b).  We do not have the

authority to read that exception into the rule by ourselves.

Historically, once an English trial was over, the advocates commenced to "try the

jury," by harassing and cajoling them into admitting that they or another juror had misbehaved in some respect during the trial. This practice came to an abrupt end when Lord Mansfield declared, in 1785, that English courts could not consider juror affidavits or testimony attesting to their own misconduct during jury deliberations.[1] Lord Mansfield's rule, that "jurors may not impeach their verdict,"[2] found widespread acceptance in the United States as well.[3]

Early Texas decisions followed Lord Mansfield's prohibitory rule religiously,[4] but, in 1905, the Texas Legislature adopted an exception to that rule, giving trial courts discretion to receive juror testimony about their misconduct during deliberations.[5] Given this unfettered discretion, the pendulum began to swing, and Texas courts soon allowed "a far wider scope of inquiry into the jury's deliberations than any other state."[6] Frequently, the jury's verdict

---

[1] *Vaise v. Delaval*, 99 Eng. Rep. 944 (K.B. 1785).

[2] *Id.*

[3] *See* 8 JOHN WIGMORE, EVIDENCE § 2352 (McNaughton rev. 1961).

[4] *See St. Louis S.W. Ry. Co. v. Ricketts*, 70 S.W. 315, 317 (Tex. 1902) (stating that court had "uniformly denied the competency" of juror affidavits or testimony to attack the jury's verdict based on claims of "irregularities and improprieties of different kinds"; rejecting juror affidavits that said foreman told deliberating jurors that he had lived near depot that was subject of litigation and that it was not heated or lit, thus plaintiffs' testimony was true and defendant's witnesses' conflicting testimony was false).

[5] *See Golden Eagle Archery, Inc. v. Jackson*, 24 S.W.3d 362, 367 (Tex. 2000) (discussing the history of TEX. R. EVID. 606(b)).

[6] 1 C. MCCORMICK & R. RAY, TEXAS LAW OF EVIDENCE § 397, at 338 n.73 (2d ed. 1956).

was being reversed for "trivial misconduct."[7]    Sure enough, the pendulum swung back.  In 1983, the Texas Supreme Court adopted Rule 606(b), which generally bars post-verdict juror affidavits or testimony to attack the validity of its verdict.  In 1998, when the civil and criminal evidentiary rules were merged, Rule 606(b), as promulgated by the Texas Supreme Court, became applicable to criminal cases as well as civil cases.  Our interpretation and application of that rule should follow that of our state supreme court.

Rule 606(b) serves several important public policy interests.  First, as the United States Supreme Court has stated, it protects jurors from harassment:

> [L]et it once be established that verdicts solemnly made and publicly returned into court can be attacked and set aside on the testimony of those who took part in their publication, and all verdicts could be, and many would be, followed by an inquiry in the hope of discovering something that might invalidate the finding.  Jurors would be harassed and beset by the defeated party in an effort to secure from them evidence of facts which might establish misconduct sufficient to set aside a verdict.[8]

Second, it protects the sanctity of the jury deliberation room and thereby encourages the jurors to engage in full and frank discussions.[9]  Jurors would be hesitant to express their opinions freely if they thought that their statements would later be held up for public

---

[7] *See id.* § 394, at 332.

[8] *McDonald v. Pless*, 238 U.S. 264, 267 (1915).

[9] *Id.* at 267-68 (discussing need to prevent "what was intended to be private deliberation" from being made subject to public scrutiny "to the destruction of all frankness and freedom of discussion").

scrutiny.[10]  Third, allowing jurors to attack their own verdicts would undermine the finality

of judgments.[11]  Judges "would become Penelopes, forever engaged in unraveling the webs

they wove."[12]  Fourth, allowing jurors to attack the integrity of their verdicts would invite

tampering with the process.[13]  For example, a juror who reluctantly joined a verdict may be

sympathetic to later overtures by the losing party to view his earlier consent as being based

upon impermissible considerations.[14]

At bottom, the best justification for Rule 606(b)  prohibiting jurors from impeaching

their own verdicts is that the rule protects a good system that cannot be made perfect.  As the

Supreme Court stated, "There is little doubt that postverdict investigation into juror

misconduct would in some instances lead to the invalidation of verdicts reached after

---

[10] *See Shillcutt v. Gagnon*, 827 F.2d 1155, 1159 (7th Cir. 1987) (noting that a "fruitful exchange of ideas and impressions among jurors" depends upon "some assurance that what is said in the jury room will not reach a larger audience").

[11] *Tanner v. United States*, 483 U.S. 107, 120 (1987) (allegations of juror misconduct during deliberations would "seriously disrupt" finality).

[12] *Jorgensen v. York Ice Machinery Corp.*, 160 F.2d 432, 435 (2d Cir. 1947) (Judge Learned Hand) ("[I]t would be impracticable to impose the counsel of absolute perfection that no verdict shall stand, unless every juror has been entirely without bias, and has based his vote only upon evidence he has heard in court. It is doubtful whether more than one in a hundred verdicts would stand such a test; and although absolute justice may require as much, the impossibility of achieving it has induced judges to take a middle course, for they have recognized that the institution could not otherwise survive; they would become Penelopes, forever engaged in unravelling the webs they wove. Like much else in human affairs, its defects are so deeply enmeshed in the system that wholly to disentangle them would quite kill it.").

[13] *See United States v. Eagle*, 539 F.2d 1166, 1170 (8th Cir. 1976) (purpose of rule is to prevent "fraud by individual jurors who could remain silent during deliberations and later assert that they were influenced by improper considerations").

[14] *Id.*

irresponsible or improper juror behavior. It is not at all clear, however, that the jury system could survive such efforts to perfect it."[15]

On the other hand, the rule exacts great costs as well. Verdicts that are based upon information and opinions that have not been introduced into evidence, a misunderstanding of the applicable legal principles, or the influence of threats or bribes are unfair to the losing party.[16] Rule 606(b) is an attempt, albeit imperfect, to strike an appropriate balance between the need the protect jurors, the verdict, and the sanctity of juror deliberations against the strongly competing desire to rectify a verdict tainted by irregularity.

Because of the high cost of insulating a verdict tainted by irregularity, Federal Rule 606(b)[17] created two narrow exceptions to the prohibition against post-verdict juror affidavits and testimony. A juror may testify to whether (A) "extraneous prejudicial information was

---

[15] *Tanner*, 483 U.S. at 120.

[16] 1 STEVEN GOODE ET AL., GUIDE TO THE TEXAS RULES OF EVIDENCE: CIVIL AND CRIMINAL, § 606.2, at 535 (Tex. Prac. Series 1993).

[17] Federal Rule 606(b) reads as follows:

**(b) During an Inquiry Into the Validity of a Verdict or Indictment.**

(1) **Prohibited Testimony or Other Evidence.** During an inquiry into the validity of a verdict or indictment, a juror may not testify about any statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict or indictment. The court may not receive a juror's affidavit or evidence of a juror's statement on these matters.

2) **Exceptions.** A juror may testify about whether:

(A) extraneous prejudicial information was improperly brought to the jury's attention;

(B) an outside influence was improperly brought to bear on any juror; or

(C) a mistake was made in entering the verdict on the verdict form.

improperly brought to the jury's attention," or whether (B) "an outside influence was improperly brought to bear on any juror[.]"[18] These exceptions deal with very different situations and should not be confused. They are not interchangeable.

The first, "extraneous prejudicial information," refers to any information that is "conveyed to the jury through extrarecord sources,"[19] unless that information is common knowledge in the community. Such information frequently could have been, but was not, introduced as evidence at trial. The problem with anyone, juror or non-juror, providing this extrarecord material is that the parties do not have an opportunity to meet, rebut, or explain that information which may, or may not, be accurate.[20] Under this exception, juror affidavits and testimony that admit to reading newspaper articles, listening to radio programs, or watching television reports about the trial may be offered to attack the validity of the verdict.[21] A juror's affidavit concerning his or another juror's conduct of looking up

---

[18] A third exception, whether "a mistake was made in entering the verdict on the verdict form," was adopted in 2006 to permit juror affidavits and testimony to prove a clerical error in recording the verdict. *See* FED. R. EVID. 606(b) advisory committee's note on 2006 amendments.

[19] 3 CHRISTOPHER B. MUELLER & LAIRD C. KIRKPATRICK, FEDERAL EVIDENCE § 249, at 70 (2d ed. 1994) ("MUELLER").

[20] *Id.* at 71.

[21] *See, e.g.*, *Mattox v. United States*, 146 U.S. 140, 149-51 (1892) (trial judge erred in excluding juror affidavits admitting to reading a newspaper article during deliberations stating that defendant had been tried for his life once before, that the evidence against him was very strong, that the argument of the prosecution was such that defendant's friends gave up all hope, and that the jury's deliberations would probably not last over an hour) MUELLER, *supra* note 19, at 71 ("The exception allows proof that one or more members of the jury brought to trial specific personal knowledge about the party or controversy or acquired such knowledge from sources outside the courtroom during trial or deliberations, often by way of media sources (newspaper,

prejudicial information about the parties or the trial on the Internet and reporting his findings back to other jurors may be admissible under this particular exception.[22]

The second exception, an "outside influence" improperly brought to bear on a juror, refers to those blatant, subtle, or even unconscious acts by outsiders to affect the verdict or interfere with the deliberations. In simple terms, it refers to jury tampering.[23] Obviously, a juror's affidavit or testimony concerning someone's attempts to bribe, blackmail, or threaten any juror would qualify under this exception.[24] Inadvertent, but improper, statements by a

radio, television).") (footnotes omitted).

[22] *See Stebner v. Assoc. Materials, Inc.*, 234 P.3d 94, 98 (Mont. 2010) (juror's affidavit admitting that she conducted and shared internet research on the term "preponderance" prior to jury reaching verdict in breach of warranty case could be considered in deciding whether her research constituted extraneous prejudicial information that was improperly brought to jury's attention; concluding that it was not prejudicial and did not affect jury's verdict); *cf. State v. Patino*, 699 S.E.2d 678, 684 (N.C. Ct. App. 2010) ("Extraneous prejudicial information is 'information dealing with the defendant or the case which is being tried, which information reaches a juror without being introduced in evidence.' Dictionary definitions of legal terms researched and read to the jury by the foreperson are not extraneous prejudicial information and cannot be used to impeach a jury's verdict.") (citations omitted).

[23] *McDonald v. Pless*, 238 U.S. 264, 267-68 (1915) (while the prohibition against post-verdict juror affidavits or testimony "may often exclude the only possible evidence of misconduct, a change in the rule 'would open the door to the most pernicious arts and tampering with jurors.' 'The practice would be replete with dangerous consequences.' 'It would lead to the grossest fraud and abuse' and 'no verdict would be safe.'") (citations omitted).

[24] *See Remmer v. United States*, 347 U.S. 227, 229 (1954) ("In a criminal case, any private communication, contact, or tampering directly or indirectly, with a juror during a trial about the matter pending before the jury is, for obvious reasons, deemed presumptively prejudicial"); *Jorgensen v. York Ice Machinery Corp.*, 160 F.2d 432, 435 (2d Cir. 1947) ("bribery" of juror is a matter on which juror affidavits may be received).

bailiff to the jury[25] or protesters marching outside the courthouse with threatening signs might also qualify if they are likely to affect the jury's verdict.

The drafters of the Texas Rules of Civil Evidence recommended that the Supreme Court adopt Federal Rule 606(b) verbatim, thus including the two exceptions to the general prohibition against juror affidavits or testimony to attack the validity of the verdict.[26] But the Texas Supreme Court intentionally deleted the "extraneous prejudicial information" exception.[27] "Although it offered no explanation for its action, the most plausible explanation is that the Court was consciously trying to curtail the widespread, and widely criticized, practice of 'trying the jury.'"[28] Professors Goode, Wellborn, and Sharlot (all three of whom had been on the Liaison Committee that drafted the 1983 rules), explain that, if the Supreme Court had "retained the malleable 'extraneous prejudicial information' exception, lawyers would still have had a strong incentive to contact jurors after a verdict was rendered."[29] Indeed, that is precisely what happened in criminal cases when this Court

---

[25] *See United States v. Greer,* 620 F.2d 1383, 1385-86 (10th Cir. 1980) (jurors could testify to lunch break conversation with deputy marshal who told them about terms and effects of Youth Corrections Act and different types of possible sentencing).

[26] *See* S. GOODE ET AL. *supra* note 16, § 606.2, at 540. Professors Goode, Wellborn, and Sharlot explain, "As proposed by the Liaison Committee, Texas Civil Rule 606(b) would have contained both the 'extraneous prejudicial information' and 'outside influence' exceptions."

[27] *Id.*

[28] *Id.*

[29] *Id.*

enacted its vague and amorphous exception to Rule 606(b) in 1986.[30]  It was for that very reason that this Court adopted the Supreme Court's version of Rule 606(b) in 1998.[31]  Having adopted the Supreme Court's version of the rule, we ought not change its meaning and content without first (1) consulting that court, and (2) changing the wording of the rule to explicitly incorporate the federal exception for "extraneous prejudicial information."  Perhaps it would be a good idea to amend Rule 606(b) to allow courts to consider juror affidavits and testimony about a juror's Internet research and her report of that research back to other jurors.  But until Rule 606(b) is formally amended, we are not free to do so informally.

---

[30] Rule 606(b) of the Texas Rules of Criminal Evidence read as follows:

**(b) Inquiry Into Validity of Verdict or Indictment**

Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, *except that a juror may testify as to any matter relevant to the validity of the verdict or indictment.* Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes.

This rule was deceptively worded and internally contradictory.  First, it prohibits the jurors from testifying to any matter occurring during its deliberations and then it contains an exception that states that jurors may testify as to anything relevant to the validity of the verdict.  That exception completely swallowed the rule and "was the source of much confusion[.]"

[31] GOODE ET AL., *supra* note 15, § 606.3, at 193 (2001 Supp.) ("New Rule 606(b) changes dramatically the extent to which jurors may testify concerning the validity of a criminal verdict or indictment. . . . Presumably, the Court of Criminal Appeals decided to align criminal practice with civil practice."); *see Hines v. State*, 3 S.W.3d 618, 621 (Tex. App.–Texarkana 1999, pet. ref'd) ("[T]he rule in civil cases is now the rule in criminal cases: jurors may testify only to whether any outside influence was brought to bear upon a juror."); *In re S.P.*, 9 S.W.3d 304, 308-09 (Tex. App.–San Antonio 1999, no pet.) (noting that courts in criminal cases should look to civil cases for guidance on what constitutes an "outside influence"; jury's discussion about the thickness of defendant's probation file, which was not introduced into evidence, was not an "outside influence").

I respectfully dissent.

Filed: October 10, 2012
Publish