GRIFFIN, J.
Kimberly Sue Davis [“Davis”] appeals her judgment and sentence on three counts of uttering a forgery and two counts of petit theft.
The victim, James Poppel [“Poppel”], testified at trial that the defendant, Davis, had been a guest in his home on at least two occasions. Davis had dated his former roommate, and Poppel had known her for about two or three years. Sometime in September or October of 1997, Davis visited Poppel’s home and asked to use the bathroom. Poppel testified that he left his checks on the dresser near the bathroom.
On October 10, 1997, two checks payable to Kimberly Davis were drawn on Poppel’s account and presented for payment at a drive-thru teller at Public Bank around 3:30 P.M. After asking for and receiving a driver’s license for identification, the teller, Gail Gift, cashed the checks. The license belonged to the defendant, Kimberly Davis. Gift testified that, typically, when a driver’s license is presented for identification, she attempts to ensure that the driver’s license picture matches the check presenter’s features. Gift was not sure if she followed that procedure in the instant case, but later identified Davis’ driver’s license from a photo array as the driver’s license presented on October 10,1997.
Subsequently, a third check was presented for payment at the drive-thru on Poppel’s account at Public Bank. Poppel was a frequent customer for about a year, and the lead teller, Mary Salisbury, recognized his signature. When the third check was presented, Salisbury questioned the signature. She checked Poppel’s signature card and found that the signatures did not match. She attempted to contact Poppel, but when she could not reach him, she copied the front and back of the check, as well as the driver’s license submitted for identification, and refused to honor the cheek. The check was presented by a young female, approximately twenty-five to thirty years old, with long dark hair and *1093 sunglasses. The woman’s facial features matched the driver’s license photograph.
On October 17, 1997, Poppel went to Public Bank to cash a check. Marie Salisbury showed him' a copy of a driver’s license and asked him if he recognized the woman in the picture. He responded affirmatively. Marie then showed him two checks written on his account which he identified as forgeries.
Davis, who testified on her own behalf at trial, admitted visiting Poppel’s residence but denied taking his checks. She also testified that she lost her driver’s license and obtained a duplicate on August 21, 1997. On direct examination, she stated that she did not “specifically” remember her whereabouts on October 10, 1997, but testified that she was “probably working” at her job as a waitress at Rio Bravo. She testified that she usually goes to work between 3:00 and 4:00 P.M.
During cross-examination, the State made multiple comments, over defense objection, regarding the defendant’s failure to offer the testimony of her manager or evidence of work records to verify her claim that she was working when the checks were cashed. An example is the following exchange:
STATE: So isn’t fair to say that there are some things that you could have done to assist the State Attorney’s Office in evaluating this case?
DEFENSE COUNSEL: Judge, I thought we just addressed this issue. STATE: Let me put it a different way, then.
COURT: Okay.
STATE: So you and your lawyer, you could have had your lawyer come to the State Attorney’s Office and give us a witness list, true?
DEFENSE COUNSEL: Again, Judge. We just addressed this issue. He said he is going to leave it and he hasn’t.
COURT: Okay. I’m going to sustain the objection. And at this point, I’d like us to move on to another area of inquiry, please.
STATE: Okay. Isn’t it true that the reason you’re not giving the jury a copy of your driver’s license or a copy of that computer printout that Mr. Waggoner has, or bringing in your alibi, so-called alibi witnesses, is that Mr. Waggoner would give up his first and last closing and — in this case; isn’t that true?
DEFENSE COUNSEL: Judge—
COURT: That calls for a legal conclusion and also perhaps a breach of lawyer/client privilege. So I’m going to sustain the objection.
STATE: Did Mr. Waggoner ask you why you did not go to the police about this?
DEFENDANT: Not that I can remember.
STATE: Not on direct examination? And you didn’t tell him that,because you had no details until the start of all this, whatever—
DEFENDANT: I told him that today. I mean, I had no way of knowing of any of this.
STATE: And if your alibi had been investigated by the police or by my office, we could have found out whether it was true or false and not had to bring these people in here and have them sit through this; isn’t that true?
DEFENSE COUNSEL: Judge— COURT: We are back to the statement question that we were before, and I have asked you to move on from that area, please.
STATE: This is summing up on the alibi, and you ruled that that was admissible.
COURT: Okay. Would you please move on?
STATE: Ma‘am, I have got a cell phone right here. Would you call Rio Bravo and have your supervisor bring those payroll records down here so that the jury can see them?
*1094 DEFENSE COUNSEL: Judge, what’s going on?
COURT: Hold it. Go ahead and make your objection on the record.
DEFENSE COUNSEL: I object, Judge. I don’t understand what we are doing, here. It seems to me that’s improper. That’s, once again, asking her to put the burden on the — on her to prove her case, or whatever, and that’s not her job.
COURT: Okay. Sustained.
STATE: Judge—
COURT: No, sustained.
STATE: He’s had his speech. Let me just come up and read you some more case law.
COURT: No. Sustained. Let’s move on, please.
STATE: Well, then you will at least give the jury a curative instruction that I do have the right to comment on her failure to bring these witnesses in? That is the law, Judge.
COURT: Hold it. No. Hold it.
Davis contends that she is entitled to a new trial on the grounds that the prosecutor’s questions were deliberate and improper comments on her right to remain silent. The State on the other hand, argues that this line of inquiry became proper when Davis offered as an alibi defense that she was “probably working” when the forged checks were cashed. The State further argues that because the defendant testified that her manager was willing to testify the State had the “right to ask her why she was not doing so.” The State also argues that Davis brought her credibility into question when she testified on her own behalf and when she “made it appear that potential witnesses could have exonerated her.” Thus, the prosecutor had a right to comment on her failure to call them.
The decision of the Supreme Court of Florida that appears to control this case is Jackson v. State, 575 So.2d 181 (Fla.1991). There, the court explained that due process requires the State to prove every element of the crime charged beyond a reasonable doubt and the defendant has no obligation to present witnesses. Id. Generally, the State cannot comment on a defendant’s failure to produce evidence to refute an element of the crime charged. Id.; Janiga v. State, 713 So.2d 1102, 1103 (Fla. 2d DCA 1998). Doing so could lead the jury erroneously to believe that the defendant carried the burden of introducing evidence and might implicate the defendant’s privilege against compelled self-incrimination. Jackson, 575 So.2d at 188.
In Jackson, the supreme court articulated a narrow exception to this general rule; namely, the State may comment on the failure to produce witnesses when the defendant voluntarily assumes some burden of proof by asserting self defense, or defense of others, and the defendant relies on facts that can only be elicited from a witness not equally available to the State. Id. Specifically, the supreme court said:
It is well settled that due process requires the state to prove every element of a crime beyond a reasonable doubt, and that a defendant has no obligation to present witnesses. Accordingly, the state cannot comment on a defendant’s failure to produce evidence to refute an element of a crime, because doing so could erroneously lead the jury to believe that the defendant carried the burden of introducing evidence. However, this court has applied a narrow exception to allow comment when the defendant voluntarily assumes some burden of proof by asserting the defenses of alibi, self-defense, and defense of others, relying on facts that could be elicited only from a witness who is not equally available to the state. A witness is not equally available when there is a special relationship between the defendant and the witness. (Footnotes and citations omitted).
*1095 Id; see also Knowles v. State, 729 So.2d 473 (Fla. 4th DCA 1999)(same).
Lawyer v. State, 627 So.2d 564 (Fla. 4th DCA 1993), dismissed, 639 So.2d 981 (Fla. 1994), also involved facts similar to this case. A restaurant employee claimed he was working at the time of a robbery and that his manager had given him a ride home. The fourth district held that the appropriate rule governing prosecutorial comment on the defendant’s failure to produce a witness in Florida was the rule articulated by the supreme court in Jackson:
We conclude from Jackson that the rule in this state is that the prosecution can comment on a defendant’s failure to produce a witness only if: (1) the defendant puts on evidence of. defenses such as alibi or self-defense which reflects the existence of a witness who could give relevant testimony and, (2) that witness has a special relationship with the defendant. We interpret the emphasized language quoted above from Jackson as eliminating any arguable distinction between a witness classified as “not equally available” to the defendant and a witness who has a “special relationship” with the defendant. They are simply different ways of saying the same thing.
Latoyer, 627 So.2d at 567. Relying on Jackson, the court in Latoyer held that the manager of the restaurant where the defendant worked, who purportedly would have supported the defendant’s alibi defense, was not shown to have a “special relationship” with the defendant. Lawyer. Therefore, although the defendant had asserted an alibi defense, the narrow exception to the general rule governing the State’s comment on the failure to produce a witness did not apply. Id. Accordingly, the fourth district held that the State committed reversible error when it commented on the defendant’s failure to produce the manager at trial. Id.; see also Thomas v. State, 726 So.2d 369, 371 (Fla. 4th DCA 1999).
The restaurant manager at Rio Bravo, like the restaurant manager in Lawyer, does not have a special relationship with the defendant nor was he “less equally available” to the State. Latoyer, 627 So.2d at 567. In other words, this was not a witness in the defendant’s control. The State had the ability to call the manager, if it so chose, as a rebuttal witness. The questions and comments by the prosecutor in' this case were, accordingly, reversible error. The defendant is entitled to a new trial.[1]
REVERSED and REMANDED.
ANTOON, C.J., and W. SHARP, J., concur.

. Although now moot, we also agree that the provisions of Davis’ sentence providing for the payment of transcript costs and reporter fees as well as the costs of investigation, which were imposed without notice to the defendant and which were properly objected to at the time, were improper.