# FIFTH DISTRICT COURT OF APPEAL
## STATE OF FLORIDA
_____

Case No. 5D2022-3062
LT Case No. 2019-10751-CIDL
_____

GLENN BROSNAN,

    Appellant,

    v.

STATE FARM INSURANCE
COMPANY and LUCILLE V.
BROSNAN,

    Appellees.

_____


On appeal from the Circuit Court for Volusia County.
Kathryn D. Weston, Judge.

Mark A. Nation and Paul W. Pritchard, of The Nation Law Firm,
Longwood, for Appellant.

Bretton C. Albrecht, of Kubicki Draper, P.A., Fort Lauderdale, for
Appellees.

August 20, 2024

PRATT, J.

    In this appeal, we consider whether the trial court erred when
it permitted counsel for State Farm Florida Insurance Company
("State Farm") to highlight, during closing argument, Appellant's
failure to call eyewitnesses during the jury trial. We conclude that

State Farm's closing argument was not improper, and we affirm the final judgment.

## I.

This case arises from a homeowners' insurance claim that Appellant Glenn Brosnan and his mother, Lucille Brosnan, submitted to State Farm in February 2019 after their toilet overflowed. The applicable policy period ran from July 2, 2018, to July 2, 2019. In their claim, the Brosnans asserted that their loss occurred on November 22, 2018. The same toilet was the subject of a cancelled 2016 claim. In addition, the Brosnans previously had submitted—and State Farm previously had paid—water loss claims in 2009 and 2011. Those two prior claims concerned a washing machine overflow and a kitchen waste line leak.

Following its adjuster's inspection, State Farm partially paid the new claim, contending in its partial denial letter that certain policy exclusions applied to the claimed loss. At this time, the Brosnans had not informed State Farm's adjuster that the cancelled 2016 claim concerned the same toilet. After receiving the partial denial, the Brosnans brought a breach of contract suit, seeking additional payment for their claim.

Mr. Brosnan testified during his deposition that on the day the water loss occurred, he was at work when he received a call from his visiting sister informing him that the toilet was leaking. When he arrived home, Mr. Brosnan saw towels on the floor, and he used a shop vacuum to dry the floors. Mr. Brosnan also testified that November 22, 2018, was the first date on which someone in the home noticed something wrong with the toilet. Ms. Brosnan testified in her deposition that she usually reported her household's claims to State Farm and that she and Mr. Brosnan's sister put down newspapers and towels to clean up the water after the 2018 leak. Mr. Brosnan's sister, a New York resident, testified in her deposition that she knew there was a flood in the bathroom while she was visiting the Brosnan home for Thanksgiving in November 2018 because she remembered putting towels down and calling Mr. Brosnan. All three depositions repeatedly referenced the claimed loss date of November 22, 2018.

The case proceeded to a jury trial. At some point during the trial, it was discovered that November 22, 2018, could not be the actual date of the loss because that day was Thanksgiving, Mr. Brosnan did not work on Thanksgiving, and Mr. Brosnan had testified that he learned of the leak while at work. While on the stand, Mr. Brosnan, for the first time, testified that the date of the loss was *not* November 22, 2018. In a sidebar discussion, the parties conferred about how to treat the deposition testimony of Mr. Brosnan's sister, given that her testimony repeatedly referenced the inaccurate November 22 date. The sidebar established that the discrepancy would go to credibility, and State Farm stated that it would read the deposition as part of its case. Afterward, the Brosnans elected not to introduce the sister's deposition testimony during their case. State Farm did likewise. Accordingly, the sister's testimony was never introduced at trial.

Before closing arguments, the Brosnans orally moved in limine to prevent State Farm from asking the jury to make any adverse inference from their failure to call the sister as a witness at trial. Indeed, the court had afforded similar relief to State Farm by granting its pre-trial motion in limine and prohibiting the Brosnans from making arguments about State Farm's failure to call certain witnesses or failure to bring deposed witnesses to the trial. Nonetheless, the court allowed State Farm to highlight the absence of testimony from other witnesses, so long as it confined its argument to the proposition "that there were other people there the date when this happened and they weren't here to testify."

State Farm availed itself of the court's allowance and argued credibility at closing. It asked the jury to consider when the loss happened, whether it happened during the policy period or instead owed to the 2016 toilet problem, and whether it even happened at all. After reciting Mr. Brosnan's repeated assertions of a November 22 loss date, his insistence that he'd learned of the leak while at work during a phone call from his sister, and his testimony that others were present at his house on that date, State Farm's counsel argued:

> You remember, there were people at his house that date. Why? For Thanksgiving. Now, the easiest thing in the world right now if Mr.

Brosnan wants to, to fix that date, because now he said, well, maybe it was the Thursday before Thanksgiving, the easiest thing in the world right now would be to bring people in to corroborate that story. That would be the easiest thing in the world to do.

State Farm's counsel urged the jury to conclude that the Brosnans failed to prove that any loss happened during the policy period, "because you're not even sure if there was an event. You know it wasn't on Thanksgiving. Was it the week before? No one came in to corroborate it. That would have been easy to do."

Ultimately, the jury sided with State Farm and concluded that the Brosnans failed to prove a policy-period loss. It therefore rendered a verdict for State Farm. The trial court denied the Brosnans' motion for new trial and entered final judgment for State Farm. Mr. Brosnan then timely appealed.

## II.

Appellant asserts that he is entitled to a new trial because it was reversible error for the trial court to allow State Farm, during closing argument, to ask the jury to make an adverse inference from his failure to call his sister as a witness. We review for abuse of discretion a trial court's determinations on the propriety of a closing argument, whether those determinations occur in limine, during trial, or on a motion for new trial. *See Patrick v. State*, 104 So. 3d 1046, 1056 (Fla. 2012); *Murphy v. Int'l Robotic Sys., Inc.*, 766 So. 2d 1010, 1031 (Fla. 2000); *Cloud v. Fallis*, 110 So. 2d 669, 673 (Fla. 1959).

State Farm first contends that Appellant did not preserve his argument on appeal because he did not contemporaneously object to the trial court's limitations on argument when it ruled on his oral motion in limine, he did not object to the argument when it was made at closing, and his motion for new trial did not expressly seek rehearing of the court's earlier decision on his oral motion in limine. We disagree. Appellant's anticipatory motion in limine timely and clearly apprised the trial court of his position that it would be error to allow State Farm to argue an adverse inference

4

from his failure to call his sister as a witness. And he makes the same argument on appeal that he did below in his motion in limine. Moreover, Appellant reiterated the argument in his motion for new trial, acknowledging that the court had denied his motion in limine but contending that State Farm could not argue adverse inferences from his failure to call a witness equally available to both parties. Therefore, we conclude that the argument is preserved for our review. *See Aills v. Boemi*, 29 So. 3d 1105, 1108 (Fla. 2010); *see also Sparre v. State*, 289 So. 3d 839, 848 (Fla. 2019) (to preserve an issue for appellate review, a litigant must "present the issue to the trial court in a timely, specific manner and obtain a ruling").

## III.

Having concluded that Appellant's argument is properly before us, we now turn to its merits.

## A.

At common law, "[t]he nonproduction of evidence that would naturally have been produced by an honest and therefore fearless claimant permits the inference that its tenor is unfavorable to the party's cause." 2 J. Wigmore, *Evidence in Trials at Common Law* § 285, at 192 (J. Chadbourne rev. ed. 1979); *see* Robert H. Stier, Jr., *Revisiting the Missing Witness Inference – Quieting the Loud Voice from the Empty Chair*, 44 Md. L. Rev. 137, 139 (1985). That principle extended to the nonproduction of witnesses. *See Graves v. United States*, 150 U.S. 118, 121 (1893) ("The rule, even in criminal cases, is that, if a party has it peculiarly within his power to produce witnesses whose testimony would elucidate the transaction, the fact that he does not do it creates the presumption that the testimony, if produced, would be unfavorable."). This oft-called "missing witness rule" derived as a negative inference from the common-law practice that calling a witness entailed vouching for the witness's testimony, and the calling party could not impeach his own witness. *See Harris v. State*, 182 A.3d 821, 832 (Md. Ct. App. 2018). If a party declined to call a witness that was peculiarly within his power to produce, juries could infer that any testimony the witness might have given would have been unfavorable to the party. *See id.*; *see also Graves*, 150 U.S. at 121.

5

With the adoption of modern evidence and discovery codes—under which parties have broader access to witnesses before trial, may call at trial any witness they choose, and may impeach their own witnesses' testimonies—some courts have suggested that the missing witness rule is an anachronism. *See, e.g.*, *Harris*, 182 A.3d at 834–35; *Herbert v. Wal–Mart Stores, Inc.*, 911 F.2d 1044, 1048 (5th Cir. 1990); *Jones v. Otis Elevator Co.*, 861 F.2d 655, 659 n.4 (11th Cir. 1988). However, no party to this appeal disputes the rule's continuing viability, and indeed, both we and the Florida Supreme Court have continued to recognize it. *See, e.g.*, *Terry v. State*, 668 So. 2d 954, 963–64 (Fla. 1996); *Conner v. State*, 910 So. 2d 313, 315–16 (Fla. 5th DCA 2005); *Davis v. State*, 744 So. 2d 1091, 1094–95 (Fla. 5th DCA 1999). Other district courts of appeal have done likewise, in both criminal and civil cases. *See, e.g.*, *Washington v. State*, 811 So. 2d 724, 725 (Fla. 3d DCA 2002); *Lowder v. Econ. Opportunity Fam. Health Ctr., Inc.*, 680 So. 2d 1133, 1135–36 (Fla. 3d DCA 1996); *Fino v. Nodine*, 646 So. 2d 746, 750–51 (Fla. 4th DCA 1994).

The Florida Supreme Court clearly articulated the contours of the missing witness rule in a line of criminal cases culminating in *Jackson v. State*, 575 So. 2d 181 (Fla. 1991). Before *Jackson*, the Court already had observed a traditional limitation on the rule: when an available and competent witness is "equally available to both parties, no inference should be drawn or comments made on the failure of either party to call the witness." *State v. Michaels*, 454 So. 2d 560, 562 (Fla. 1984). *Jackson* reaffirmed this limitation on the missing witness rule and clarified that the factfinder may draw an adverse inference from a missing witness where the defendant "voluntarily assumes some burden of proof by asserting the defenses of alibi, self-defense, and defense of others, relying on facts that could be elicited only from a witness who is not equally available to the state." 575 So. 2d at 188. It continued: "A witness is not equally available when there is a special relationship between the [criminal] defendant and the witness." *Id.*

While *Jackson* focused on the missing witness inference's implications for certain rights of the accused, *see id.* at 188 & n.4, courts have understood *Jackson* and its progeny to mark the permissible bounds of the inference not just in criminal cases, but in civil cases as well. *See, e.g.*, *Lowder*, 680 So. 2d at 1135 (citing

6

*Terry*, 668 So. 2d at 963; *Jackson*, 575 So. 2d at 188). Courts also have understood *Jackson* to displace earlier conceptions of equal availability. Some pre-*Jackson* appellate decisions had suggested that the equal-availability inquiry should "take into account both practical and physical considerations" beyond simply the relationship between the party and the witness. *Martinez v. State*, 478 So. 2d 871, 871–72 (Fla. 3d DCA 1985) (quotation marks omitted). However, post-*Jackson* opinions—including one from our court—have read *Jackson* to "eliminat[e] any arguable distinction between a witness classified as 'not equally available' . . . and a witness who has a 'special relationship' with the defendant," concluding that those terms "are simply different ways of saying the same thing." *Davis*, 744 So. 2d at 1095 (quoting *Lawyer v. State*, 627 So. 2d 564, 567 (Fla. 4th DCA 1993)). This relationship-focused approach has been followed in jurisdictions outside Florida as well. *See Welsh v. United States*, 844 F.2d 1239, 1245 n.1 (6th Cir. 1988) (observing that under Kentucky law, "a witness is not considered 'equally available' if he is presumptively interested in the outcome or if his relationship to one party would reasonably be expected to make his testimony naturally more favorable to that party").

The Florida Supreme Court has found a special relationship where the uncalled witness had a close familial relationship to the defendant. *See Jackson*, 575 So. 2d at 188 (mother of the defendant); *Michaels*, 454 So. 2d at 562 (daughter of the defendant); *Buckrem v. State*, 355 So. 2d 111, 112 (Fla. 1978) (wife of the defendant); *see also Jackson*, 575 So. 2d at 188 (approvingly citing *Jenkins v. State*, 317 So. 2d 90, 91 (Fla. 1st DCA 1975) (common-law wife of the defendant)). More distant personal relationships, however, may not qualify. For example, we have concluded that an employer-employee relationship did not constitute a "special relationship" under *Jackson. See Davis*, 744 So. 2d at 1095; *accord Lawyer*, 627 So. 2d at 567.

## B.

We conclude that State Farm's closing argument did not stray beyond the permissible bounds of the missing witness rule.

First, when viewed in context, State Farm's closing argument appears not to have urged the kind of adverse inference that falls within the missing witness rule. The argument did not identify a particular uncalled witness, and it came short of claiming that the witness would have testified adversely to Appellant. Instead, it observed that Appellant himself claimed there were other witnesses to the loss, and yet he failed to bring any eyewitnesses before the jury. Because State Farm's primary argument was that Appellant failed to prove a policy-period loss, this seems to us a fair comment on Appellant's failure to satisfy his burden of proof, rather than an invitation for the jury to infer that a particular absent witness would contradict Appellant's testimony.

Even if State Farm's argument were best characterized as urging the jury to infer that Appellant's sister would have testified adversely to him, it still would be permissible. That's because Appellant bore the burden of proof to establish a policy-period loss, and his sibling relationship with his sister qualifies as a special relationship. These two facets of the case meet the "narrow exception" allowing the missing witness inference under *Jackson*. *See Jackson*, 575 So. 2d at 188; *Davis*, 744 So. 2d at 1095. Appellant responds that we should overlook the sibling relationship in favor of a more practical consideration: that his sister's deposition testimony was, as a functional matter, equally accessible to both sides. However, as we explain above, we understand *Jackson* to eschew such practical considerations and eliminate any potential daylight between "special relationship" and "equal availability." The phrases "'are simply different ways of saying the same thing.'" *Davis*, 744 So. 2d at 1095 (quoting *Lawyer*, 627 So. 2d at 567). Given that close familial relationships qualify as special relationships, and in the absence of any countervailing evidence of estrangement, *cf., e.g.*, *Wall v. Costco Wholesale Corp.*, 857 So. 2d 975, 976 (Fla. 3d DCA 2003), we conclude that Appellant's sister was not equally available to State Farm.

In sum, whether framed as a missing witness inference or an inference of another sort, we find no impropriety in State Farm's closing argument. Put plainly, Appellant himself opened the door to the argument by testifying that others witnessed the loss that he bore the burden to prove. *Cf. Jenkins*, 317 So. 2d at 91 (allowing the State "to comment that [the] defendant failed to produce his

8

common law wife to testify as his counsel promised" during his opening statement). It was a fair reply for State Farm's counsel to observe that Appellant never produced for the jury any witnesses to corroborate his version of events. State Farm was entitled to argue, and the jury was entitled to infer, that Appellant's failure to come forward with any eyewitnesses cut against his credibility in establishing a claim on which he bore the burden of proof.

## IV.

For the foregoing reasons, we affirm the final judgment.

AFFIRMED.

JAY and KILBANE, JJ., concur.

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____